# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### AUGUST SESSION, 1996

FILED

October 1, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,          )
                             )      No. 03C01-9510-CC-00321
        Appellee             )
                             )      BLOUNT COUNTY
vs.                          )
                             )      Hon. D. Kelly Thomas, Jr., Judge
JOHN RUSSELL TURNER,         )
                             )      (DUI)
        Appellant            )


For the Appellant:                  For the Appellee:

Mack Garner                         Charles W. Burson
District Public Defender            Attorney General and Reporter
318 Court Street
Maryville, TN  37801                Michael J. Fahey, II
                                    Assistant Attorney General
                                    Mary Ann Queen,
                                    Legal Assistant
                                    Criminal Justice Division
                                    450 James Robertson Parkway
                                    Nashville, TN 37243-0493


                                    Michael L. Flynn
                                    District Attorney General

                                    Charles Carpenter
                                    Asst. District Attorney General
                                    Blount County Courthouse
                                    Maryville, TN  37801


OPINION FILED: _____

AFFIRMED


**David G. Hayes**
Judge

**OPINION**

The appellant, John Russell Turner, appeals from his conviction by a jury for driving under the influence of an intoxicant. The Circuit Court of Blount County sentenced the appellant to eleven months and twenty-nine days incarceration in the county jail and suspended all but five days. On appeal, the appellant contends that the evidence adduced at trial is insufficient to support a conviction, because the State failed to prove that he intended to operate a vehicle.

After reviewing the record, we affirm the judgment of the trial court.

**BACKGROUND**

Shortly after midnight, on December 31, 1994, Officer Ruskey of the Maryville Police Department observed two individuals stagger across the public parking lot adjoining the "Coffee Shop," an establishment which serves alcoholic beverages, and enter a vehicle. By the time the officer approached the vehicle, the lights were on and the engine was running. The vehicle, however, remained stationary. The appellant was seated behind the steering wheel, and a female occupied the passenger seat. The appellant and his companion admitted to Officer Ruskey that they had been drinking. The appellant failed to satisfactorily perform three field sobriety tests. An intoximeter test, subsequently administered at the police station, reflected a breath alcohol level of .28 percent. Ruskey testified that there was no doubt in his mind that the appellant was intoxicated on the night in question and that the appellant's ability to operate a vehicle "was very impaired."

At trial, the appellant admitted that he was intoxicated when he entered

his vehicle. However, although the appellant conceded that he was seated behind the steering wheel when the officer approached his vehicle and that he had his car keys "out," he denied starting the engine or turning on the car's headlights. Moreover, the appellant denied any intent to drive his vehicle from the parking lot. He explained that, earlier that evening, he had called his nephew and had asked his nephew to drive him home, because he knew that he was too intoxicated to drive. According to the appellant, he was simply awaiting his nephew's arrival when approached by Officer Ruskey. The appellant's nephew also testified at trial and confirmed that he had been called by his uncle and asked to drive him home. After deliberating, the jury found the appellant guilty of driving under the influence.

## ANALYSIS

The appellant challenges the sufficiency of the evidence supporting his conviction for driving under the influence of an intoxicant. Tenn. Code Ann. § 55-10-401(a) (1993) provides: "It is unlawful for any person or persons to drive or to be in physical control of any automobile ... on any ... premises which is generally frequented by the public at large, while under the influence of any intoxicant ... ." The appellant concedes that he was under the influence of an intoxicant at the time of his arrest and that, technically, he was in physical control of his vehicle, which was located in a public parking lot. However, despite the absence of any language in the drunk driving statute requiring a culpable mental state, the appellant asserts that the crime of driving under the influence requires an intent to operate a vehicle.

In support of his argument, the appellant relies upon Tenn. Code Ann. § 39-11-102(b)(1991) and Tenn. Code Ann. § 39-11-301(b) and (c) (1991). Tenn. Code Ann. § 39-11-102(b) provides that "[t]he provisions of parts 1-6 of this chapter apply to offenses defined by other laws unless otherwise provided by

3

law." Tenn. Code Ann. § 39-11-301 provides:

> (b) A culpable mental state is required within this title unless the definition of an offense plainly dispenses with a mental element.
> (b) If the definition of an offense ... does not plainly dispense with a mental element, intent, knowledge, or recklessness suffices to establishes the culpable mental state.

"The provisions of [the criminal code] shall be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn. Code Ann. § 39-11-104 (1991). In determining the application of Tenn. Code Ann. § 39-11-102(b) and 39-11-301(b) and (c) to the driving while intoxicated statute, we note that this court has previously observed that there is no culpable mental state required for guilt of driving under the influence. State v. Fiorito, No. 03C01-9401-CR-00032 (Tenn. Crim. App. at Knoxville, November 27, 1995). See also State v. Mabe, No. 03C01-9402-CR-00051 (Tenn. Crim. App. at Knoxville, October 25, 1994)("we doubt that the offense [of driving under the influence] requires as an element that the defendant have the specific intent to drive the vehicle, in addition to having physical control"). Indeed, considering our supreme court's decision in State v. Lawrence, 849 S.W.2d 761 (Tenn. 1993), the definition of the offense of driving under the influence "plainly dispenses with a mental element." See Tenn. Code Ann. § 39-11-301. In Lawrence, our supreme court, in construing the meaning of "physical control," remarked:

> It is our opinion that the Legislature, in making it a crime to be in physical control of an automobile while under the influence of an intoxicant, "intended to enable the drunken driver to be apprehended before he strikes." We agree with the observation that "[a] motor vehicle is recognized in the law as a dangerous instrumentality when in the control of a sober person; in the control of a drunk, the dangerous instrumentality becomes lethal. Therefore ... the court [should interpret] the drunk driving statute in a way that [keeps] drunks from behind the steering wheels of motor vehicles, even when the drunk need[s] to 'sleep it off.'"

Lawrence, 849 S.W.2d at 765 (emphasis added). Contrast State v. Love, 897

4

S.W.2d P.2d 626, 628-630 (Ariz. 1995). In other words, in enacting the driving while intoxicated statute, the legislature desired not only to prohibit the operation of a vehicle by an intoxicated individual, but also to remove from the inebriated the option of operating a vehicle. Accordingly, the supreme court quoted with approval the following language:

> "We believe that an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist. The defendant when arrested may have been exercising <u>no conscious violation</u> with respect to the vehicle, still there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away."

<u>Id</u>. at 765 n.2 (citing <u>Hughes v. State</u>, 535 P.2d 1023, 1024 (Okla. 1975))(emphasis added).

Thus, by defining the offense of driving under the influence to encompass the mere physical control of a vehicle, the legislature clearly signaled its intention to create a crime imposing strict liability. It is for the legislature to determine whether the public injury threatened by those driving under the influence is so great as to justify imposition of strict liability.

> While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it, there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court. It has been objected that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law. But ... the State may in the maintenance of a public policy provide "that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance."

<u>United States v. Balint</u>, 258 U.S. 250, 251-252, 42 S.Ct. 301, 302 (1922)(citations omitted).

We note that, in order to illustrate his argument, the appellant in his brief poses several hypothetical situations, including the scenario in which an

5

intoxicated and unconscious individual is carried to his car by his companions and left in the vehicle, resulting in his subsequent discovery by a police officer. However, in general, a minimum requirement for criminal liability is the performance of a voluntary act. See Model Penal Code § 2.01 (1985).[1] A voluntary act is a bodily movement performed consciously as a result of effort or determination. Id. Accordingly, in order to be subject to criminal liability under Tenn. Code Ann. § 55-10-401(a), a defendant would have to voluntarily place himself in physical control of his vehicle.

In this case, it is undisputed that the appellant voluntarily placed himself in physical control of his vehicle while under the influence of an intoxicant. Therefore, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), cert. denied, __ U.S. __, 115 S.Ct. 743 (1995); Tenn. R. App. P. 13(e). See also State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368 (1993); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983), cert. denied, 465 U.S. 1073, 104 S.Ct. 1429 (1984).

The judgment of the trial court is affirmed.

_____

_____

[1]An objective of the criminal code is to "give fair warning of what conduct is prohibited, and guide the exercise of official discretion in law enforcement, by defining the act and the culpable mental state which together constitute an offense." Tenn. Code Ann. § 39-11-101(2) (1991). Although the driving while intoxicated statute eliminates the necessity for a culpable mental state, the statute does not eliminate the necessity for some "act." Tenn. Code Ann. § 55-10-401(a); Tenn. Code Ann. § 39-11-102(b); Tenn. Code Ann. § 39-11-301(b).

DAVID G. HAYES, Judge

CONCUR:

_____
JOE B. JONES, Presiding Judge

_____
PAUL G. SUMMERS, Judge