# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

## STATE OF TENNESSEE v. EDWARD L. KELLY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-T-541   Seth Norman, Judge**

---

**No. M1999-01091-CCA-R3-CD - Decided June 9, 2000**

---

The evidence was sufficient to establish the guilt of the defendant, Edward L. Kelly, of driving under the influence of an intoxicant. Because there was proof that his blood alcohol content was over .20% and that he was in physical control of his vehicle on a public street, the conviction is affirmed. A 15-day jail sentence is not excessive in light of the defendant's prior DUI offense, even though it occurred l5 years prior to the current offense.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

WADE, P.J., delivered the opinion of the court, in which WILLIAMS and WEDEMEYER, JJ., joined.

Richard D. Piliponis, Mt. Juliet, Tennessee, for the appellant, Edward L. Kelly.

Paul G. Summers, Attorney General & Reporter, Jennifer L. Bledsoe, Assistant Attorney General, and Ed Ryan and Colin Camahan, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendant, Edward L. Kelly, was convicted of driving under the influence of an intoxicant, first offense. The trial court imposed a sentence of eleven months and twenty-nine days at 75% release eligibility and suspended all but 15 days. The defendant was fined $350.00, ordered to attend alcohol safety school, and prohibited from driving for one year. In this appeal of right, the defendant challenges the sufficiency of the evidence and, in the alternative, argues that the sentence was excessive. The judgment of the trial court is affirmed.

While on patrol at approximately 2:20 A.M. on October 22, 1997, Metropolitan Nashville Police Officer Steven Coleman observed a 1978 blue Ford Pinto in the front yard of a residence located at the corner of Lorraine Avenue and Brunswick Drive. There were deviation marks on Brunswick Drive and a mailbox had been knocked down into a private driveway. Upon inspection of the vehicle, Officer Coleman discovered that the engine was still running and that the defendant was stepping out of the driver's side. When asked what had happened, the defendant

acknowledged that he had been driving. He explained that he and his wife had been in "an altercation, an argument" and that he had just left the Four Aces Bar.

Officer Coleman described the defendant as appearing unkempt, smelling of alcohol, and having bloodshot eyes and slightly slurred speech. It was his opinion that the defendant failed two field sobriety tests: the walk and turn and the one-legged stand. During the latter examination, the defendant said, "I can't go on, I'm drunk." After his arrest, the defendant submitted to a breathalyser test. His blood alcohol content was .208%.

Deloris Frazier, a bartender at the Four Aces Bar, testified for the defense. While she could not recall the date of the defendant's arrest, she claimed that she had refused to serve the defendant that night because he was already intoxicated when he arrived at the bar. Ms. Frazier testified that she took his keys, gave them to a woman she initially identified only as "Sherry," and asked her to drive him home. Ms. Frazier recalled that "Sherry" and the defendant left the bar at 2:00 A.M. On cross-examination, Ms. Frazier referred to "Sherry" as either "Sherry, Sherrell, or Sharon, her name starts with an S" Wright. She also stated that they left the bar at 4:00 A.M. Ms. Frazier claimed that she saw "Sherry" two days later and learned of the defendant's arrest. She contended that "Sherry" admitted driving the defendant's vehicle at the time of the wreck and that "Sherry" said that afterwards she "took off" and was not arrested.

Carlos Williams, a resident of Brunswick Drive, also testified for the defense. He stated that he was asleep on the night in question and was awakened by the sounds of a car accident. Williams recalled seeing the Pinto and seeing a short, blond woman, "jump out of the car" and walk away from the driver's side. He stated that because of darkness, he did not see the defendant until he walked outside of his residence.

Peggy Gillian also claimed to have seen a woman walking through the yard where the vehicle came to rest. She stated that when she went outside a minute or so later, she saw the defendant talking to the officer. Ms. Gillian conceded that she did not know who was driving the Ford Pinto.

The defendant testified that he was drinking on the night of his arrest to "drown his sorrows about his marital difficulties." He did not recall driving to the bar, did not remember "Sherry," and had no recollection of her driving his vehicle. The defendant said that otherwise he could not remember the course of events and acknowledged that he could have been driving. He stated that he later learned from Ms. Frazier that "Sherrell" had admitted that she was driving at the time of the accident.

From this testimony, the defendant contends that the state was unable to prove that he was the driver of the vehicle when the accident occurred or, in fact, that he had driven the vehicle on a public road. The state asserts the jury heard ample evidence that the defendant was in physical control of the vehicle on a street or alley.

When a defendant challenges the sufficiency of the evidence, the appellate court must

determine whether the evidence at trial is sufficient "to support the findings by the trier of fact beyond a reasonable doubt." Tenn. R. App. P. 13(e). The court does not "reweigh or reevaluate the evidence" when making a sufficiency determination. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The reviewing court is "required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence." Id.

Once approved by the trial court, a jury verdict accredits the witnesses presented by the state and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of the witnesses, the weight given to their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as the trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises the presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

Tennessee Code Annotated Section 55-10-401(a) provides as follows:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor vehicle driven on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of an intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

Here, the officer saw the defendant behind the steering wheel of the car. The engine was in operation. No one else was present. The defendant admitted that he had been driving. The seat of the defendant's compact car was adjusted "all the way back" allowing Officer Coleman, who was over six feet, to sit comfortably behind the steering wheel. The implication, of course, was that the defendant, rather than a "short blond," had been in control of the vehicle just before the arrival of the police and had been driving on a public street just before the accident. Officer Coleman described the defendant as being "as tall or taller than myself." The jury, as was its privilege, declined to accredit the testimony that "Sherry" was driving when the accident occurred and had successfully escaped from the scene before the officer's arrival.

One may be in physical control if he places himself behind the steering wheel of a stationary vehicle and the engine is in operation and the headlights are on. State v. Turner, 953 S.W.2d 213, 216 (Tenn. Crim. App. 1996). The totality of the circumstances test is utilized to

determine whether a defendant is in physical control. State v. Lawrence, 849 S.W.2d 761, 763 (Tenn. 1993). The extent to which the vehicle may be operated, whether the engine or the lights are turned on, the location of the ignition key, and the proximity of the defendant to the steering wheel are all appropriate considerations. Id.

Here, there was sufficient evidence of physical control. Moreover, to the extent the testimony of the defense contradicted that of the state, the jury accredited that offered by the state. Even in light of contradicting circumstantial evidence from seemingly independent witnesses, that was the jury's prerogative. There was an abundance of circumstantial evidence indicating that the defendant had control over the vehicle. Further, he admitted to the officer that he had been driving at the time of the accident. In our view, the evidence was sufficient to support the conviction.

Next, the defendant asserts that the 15-day sentence was excessive. He argues that he should not be required to serve more than 48 hours, the minimum possible. The defendant also asserts that the trial court may have inappropriately considered legislation passed after this offense which establishes a seven-day minimum sentence when the offender's blood alcohol content is .20% or more. See Tenn. Code Ann. § 55-10-403(a)(1).

In misdemeanor sentencing, trial courts are required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. The sentence must be specific and consistent with the purposes of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. § 40-35-302(a), (b). A percentage of not greater than seventy-five percent of the sentence should be fixed for service by a misdemeanor offender; however, a DUI offender may be required to serve the full one hundred percent of his sentence. Tenn. Code Ann. § 40-35-302(d); Palmer v. State, 902 S.W.2d 391, 393-94 (Tenn. 1995). In determining the percentage of the sentence to be served, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Tenn. Code Ann. § 40-35-302(d).

Upon service of the percentage ordered, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. § 40-35-302(f). The statutory scheme is designed to provide the trial court with continuing jurisdiction in the misdemeanor case and a wide latitude of flexibility. The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

Initially, the trial court's inquiry about the recent amendment which changed the minimum sentence, taken in context, appeared to have had no bearing on the sentence imposed, including the length of the jail term the trial judge assessed. After observing that the defendant had "the worst case of denial I have ever heard," and that the defendant had a "bad history of drinking," the trial judge ordered the jail sentence and an alcohol safety program. The defendant, who was also

convicted of DUI in 1987, admitted he had "no recollection of that night." While he had a good work record and supports his family, the prior criminal offense and the excessive level of intoxication would, in our opinion, warrant the sentence imposed. See generally Tenn. Code Ann. § 40-35-114.

Accordingly, the judgment is affirmed.