IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2001

## STATE OF TENNESSEE v. ZAN RAY McCRACKEN

**Appeal from the Criminal Court for Sullivan County**
**No. S42,983     R. Jerry Beck, Judge**

**No. E2000-1762-CCA-R3-CD**
**July 19, 2001**

The defendant appeals from his Sullivan County Criminal Court conviction and sentence for driving under the influence (DUI), second offense, a Class A misdemeanor. The trial court sentenced the defendant to eleven months and 29 days, with a six-month period of confinement, 45 days of which had to be served in continuous confinement. After the six-month confinement period, the defendant would serve the balance of the sentence on supervised probation. The trial court approved a $1,200 fine recommended by the jury. In this direct appeal, the defendant complains that the evidence at trial was insufficient to support his conviction, that the trial court committed reversible error in the guilt phase by allowing the jury to be informed that the defendant previously had been convicted of DUI, and that his sentence is excessive. We affirm the judgment of the trial court but remand for entry of a conforming judgment.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed; Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); Stephen M. Wallace, District Public Defender; and Terry L. Jordan, Assistant Public Defender (at trial and on appeal), for the Appellant, Zan Ray McCracken.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Tariq A. Zaidi, Assistant District Attorney General for the Appellee, State of Tennessee.

**OPINION**

The defendant, Zan Ray McCracken, was charged with DUI, second offense, *see* Tenn. Code Ann. § 55-10-401(a), after Bristol public safety officer John Byers, III stopped in the early morning hours of May 16, 1999 to investigate a 1976 Ford converted wrecker parked on the side of 16ᵗʰ Street in Bristol. The wrecker's lights were on, but the engine was not running. The

defendant was inside the wrecker, seated in the driver's seat but slumped over to his side. During his earlier rounds through that area, Officer Byers had not spotted the vehicle.

The officer approached and tapped on the window. Receiving no response, the officer opened the wrecker's door and asked if the defendant was all right. Still receiving no response and uncertain if the person was intoxicated or in medical distress, Officer Byers took the defendant by the left arm and shook him until he began to awake. Officer Byers testified at trial that the defendant seemed "confused, seemed very fuzzy." Officer Byers found the keys to the wrecker in the ignition, and he noticed a cell phone plugged into the cigarette lighter next to the defendant.

After the defendant was roused, the officer "almost instantly" detected the odor of alcohol and realized that the defendant had been drinking. The officer's belief was further buttressed when the defendant was unable to perform correctly a series of field sobriety tests. A videotape camera mounted in Officer Byers' cruiser recorded the tests being administered, and the tape was introduced as an exhibit at trial. The officer arrested the defendant and transported him to the Sullivan County Jail. The defendant refused to submit to alcohol testing, and he would not sign an implied consent form. At the scene, the defendant had produced an expired Tennessee driver's license and a Florida driver's license. The defendant was charged with DUI, second offense, and driving on a revoked driver's license, second offense.

At trial, McCracken defended against the charges on the grounds that the state had not shown that he was intoxicated, that no proof had been introduced that he was driving, and that because he was asleep in the vehicle he did not have physical control of it. The trial court agreed that the state had not shown that the defendant drove the vehicle on a public road while under the influence, and therefore it granted a judgment of acquittal on the driving on a revoked license charge.

The defendant did not testify at trial, but he presented the testimony of a close friend, Harry Roberts, who had been with the defendant for several hours before the defendant's arrest. Roberts testified that earlier in the evening the defendant drank a couple of beers. The men decided to go to the VFW, and Roberts drove the defendant's wrecker because the defendant had been drinking and because he did not have a license. Roberts parked the wrecker where Officer Byers later came upon it. Roberts locked the vehicle and gave the keys to the defendant. While at the VFW, both men "got to drinking." Roberts became separated from the defendant and was unable to find him. Finally, Roberts hailed a taxicab and went home. Roberts testified that, given the defendant's condition, he would not have ridden home with the defendant.

Based on this evidence, the jury first found the defendant guilty of DUI. The state then introduced the defendant's earlier conviction in 1990 for DUI , and the jury again deliberated and found him guilty of the enhancement count charging that he was a second offender.

## I. Sufficiency of the Evidence

The defendant complains that the state failed to prove beyond a reasonable doubt that he both drove and was in physical control of his vehicle while under the influence of an intoxicant. We disagree that the state was required to prove both driving and physical control. The evidence, furthermore, was sufficient to prove that, while under the influence of an intoxicant, the defendant was in physical control of the vehicle.

In reviewing the sufficiency of the convicting evidence, we apply a familiar standard. When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including its direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational factfinder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); Tenn. R. App. P. 13(e); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based on direct evidence, as well as circumstantial evidence or a combination thereof. *See State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). On appeal, a defendant no longer enjoys the presumption of innocence; consequently, he shoulders the burden of demonstrating that the evidence is legally insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

In determining sufficiency of the evidence, the court does not replay and reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *See Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Rather, this court extends to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *See Cabbage*, 571 S.W.2d at 835.

The defendant in this case points to the language of the indictment charging him with DUI. The indictment alleges that he "did unlawfully drive and was in physical control" of the vehicle, whereas the statutory offense in Code section 55-10-401(a) specifies that it is unlawful for any person "to drive or to be in physical control" of a motor vehicle. *See* Tenn. Code Ann. § 55-10-401(a) (Supp. 2000). The defendant reasons that the indictment's use of the word "and" binds the state to proving driving and control. Unfortunately for the defendant, this same argument based on the contrast between an indictment charging in the conjunctive while the statute defines the offense in the disjunctive has not met with success. *See, e.g., State v. Zonge*, 973 S.W.2d 250, 254 (Tenn. Crim. App. 1997) ("Historically, when two means of committing an offense were charged in the conjunctive in a single count of an indictment as part of the same transaction, proof of either sufficed to support a conviction"); *Halquist v. State*, 489 S.W.2d 88, 92-93 (Tenn. Crim. App. 1972); *Cornell v. State*, 66 Tenn. 520, 521 (1874).

As for the defendant's back-up sufficiency argument, we agree that the state's proof fails when analyzed as a "driving" variety of DUI. The same is not true, however, for the state's evidence that the defendant was in "physical control" of his vehicle. By defining DUI to include mere "physical control" of a motor vehicle, the legislature created a strict liability crime. *See State v. Turner*, 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996). To assess whether a defendant was in physical control of a vehicle for purposes of the DUI offense, a jury looks to the totality of the circumstances, including "the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, . . . the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved." *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993); *see Turner*, 953 S.W.2d at 215 ("[I]n enacting the driving while intoxicated statute, the legislature desired not only to prohibit the operation of a vehicle by an intoxicated individual, but also to remove from the inebriated the option of operating a vehicle.").

The defendant in this case was found asleep inside his wrecker parked on a public street. He was in the driver's seat of the wrecker, albeit slumped over in the seat. He was obviously intoxicated. There is no evidence that the wrecker was incapable of being driven from the scene. Pursuant to Roberts' testimony, we know that the wrecker had been operational earlier in the evening when driven to the VFW. The engine was not running, but the keys to the wrecker were in the ignition and readily accessible, and the lights were on when Officer Byers came upon the wrecker. These facts are legally sufficient to support a finding that the defendant was in physical control of the wrecker within the meaning of the DUI statute. *See, e.g.*, *Lawrence*, 849 S.W.2d at 765 (defendant's truck stopped in the road, and defendant was asleep in the driver's seat with the vehicle's keys in his pocket; defendant "could have at any time started the engine and driven away"); *State v. Johnny Wade Meeks*, No. 03C01-9811-CR-00411, slip op. at 6 (Tenn. Crim. App., Knoxville, Dec. 3, 1999) (defendant alone and in driver's seat of van with motor running and lights on; evidence sufficient to prove physical control), *perm. app denied* (Tenn. 2000); *State v. David W. Seiber*, No. 01C01-9505-CC-00138, slip op. at 8 (Tenn. Crim. App., Nashville, Feb. 13, 1997) (defendant found either asleep or passed out behind the wheel of the vehicle with the headlights on and the key in the ignition; evidence sufficient that defendant exercised physical control over the vehicle); *State v. James W. Starnes*, No. 01C01-9408-CC-00279, slip op. at 5 (Tenn. Crim. App., Nashville, July 14, 1995) (defendant's car mechanically capable of being driven, so dispute whether he actually attempted to start vehicle is of no consequence), *perm. app. denied* (Tenn. 1996).

Thus, we conclude that the evidence was sufficient to support the jury's verdict.

## II. Driving on a Revoked License Charge

The defendant next maintains that the trial court should have granted his motion for a mistrial after the state, at the beginning of the trial, read to the jury the driving on revoked license count of the indictment, which alleged that the defendant had a prior conviction for DUI to enhance

the sentence.[1] The defendant timely objected to the jury being informed of his prior conviction, but the trial court overruled the objection on the basis that the reference to the DUI conviction was an essential element of the charged offense of driving on a revoked license, second offense. After the indictment was read, the trial court reconsidered and concluded that it should have redacted the driving on revoked license charge because the allegation of a prior DUI conviction was for enhancement and was not an essential element of the offense. Rather than order a mistrial, however, the trial court gave a cautionary instruction that the jury was not to consider the reference to a prior DUI conviction.[2]

The proper procedure, which was not followed in this case, calls for a bifurcated proceeding in which the jury considers the question of guilt on the driving on a revoked license charge without knowledge or evidence of prior enhancing convictions; if the jury determines that the defendant is guilty, evidence of prior enhancing convictions is introduced, and the jury then deliberates to consider enhanced punishment. *See Harrison v. State*, 394 S.W.2d 713, 717 (Tenn. 1965); *State v. John W. Buchanan*, No. 01C01-9411-CC-00388, slip op. at 3 n.1 (Tenn. Crim. App., Nashville, Nov. 16, 1995).

The state concedes on appeal that the failure to follow the bifurcated trial procedure was error, but it claims that the error was harmless. We agree. The "physical control" variety of DUI is a strict liability crime, as we have observed. The totality of circumstances that existed when Officer Byers found the defendant, coupled with the defendant's obvious intoxication, supplied overwhelming evidence of guilt. Evidence that the defendant was previously convicted of DUI suggests, if anything, that the defendant did not want to repeat the same mistake in this instance; instead of drinking and driving, he decided to "sleep it off." Nonetheless, his conduct brought him within the reach of our DUI statutes. In other words, the breadth of "physical control," and not the defendant's degree of intoxication or his prior DUI conviction, influenced the verdict in this case.

## III. Sentencing

In his final issue, the defendant maintains that the six-month confinement portion of his sentence is excessive and that he should be required to serve only the mandatory 45 days confinement. We detect no basis to reduce the sentence.

In determining whether the trial court has properly sentenced an individual, this court engages in a *de novo* review of the record with a presumption that the trial court's determinations

---

[1] It is a Class B misdemeanor for a person to drive "a motor vehicle on any public highway of this state at a time when the person's privilege to do so is cancelled, suspended, or revoked." Tenn. Code Ann. § 55-50-504(a)(1) (Supp. 1997). If the person's privilege to drive was cancelled, suspended or revoked because of a conviction for DUI, the punishment becomes confinement "for not less than two (2) days nor more than six (6) months, and there may be imposed, in addition, a fine of not more than one thousand dollars ($1,000)." *Id*.

[2] At the conclusion of the state's proof, the trial court granted a judgment of acquittal on this charge because the state had failed to prove beyond a reasonable doubt the "driving" element of the offense.

were correct. Tenn. Code Ann. § 40-35-401(d) (1997). In conducting *de novo* review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. § 40-35-210(b) (Supp. 2000); *see State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999). On appeal, the appellant has the burden of showing that the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997).

In felony sentencing, the trial court has an affirmative duty to state on the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. §§ 40-35-209(c), - 210(f) (Supp. 2000); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998); *State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999). By contrast, the misdemeanor sentencing statute does not require explicit findings; it specifies only that the trial court "consider" the enhancement and mitigating factors when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. § 40-35-302(d) (Supp. 2000); *Troutman*, 979 S.W.2d at 274; *Russell*, 10 S.W.3d at 278. The statutory scheme is designed to provide the trial court with continuing jurisdiction in the misdemeanor case and a wide latitude of flexibility. Additionally, the misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. *See State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

The defendant in this case was convicted of second offense DUI. Pursuant to Code section 55-10-403(a)(1), that offense is punishable by confinement "in the county jail or workhouse for not less than forty-five (45) days nor more than eleven (11) months and twenty-nine (29) days." Tenn. Code Ann. § 55-10-403(a)(1) (Supp. 2000). The trial court in this case ordered a six-month period of confinement for the defendant, 45 days of which had to be served in continuous confinement and the balance in periodic confinement. After the six-month confinement period, the defendant would serve the balance of the sentence on supervised probation. In arriving at this sentence, the trial court expressed concern with the defendant's prior history of convictions, which included felony aggravated assault, driving on a revoked license, assault and battery, DUI, public intoxication, and resisting a stop-and-frisk. The trial court's concern was well founded, and we find it to be an adequate and proper basis to justify the sentence imposed.

One final matter that must be addressed concerns the judgment form. Two judgment forms appear in the record, and neither one purports to amend the other. The forms are blank as to the percentage of the sentence that the defendant shall serve and after which the defendant is eligible for work release, furlough, trusty status, and related rehabilitative programs. *See* Tenn. Code Ann. § 40-35-302(d) (Supp. 2000). In addition, inconsistent information is contained within the forms.

Nothing in the record enlightens us why more than one judgment form was entered. In the transcript of the sentencing hearing before us, the trial court stated that it was going to enter a "sentence of split confinement" such that the defendant will serve "six months in the county jail,"

and of that six-month period, "45 days must be served day-for-day." The trial court added that the sentence "above the 45 days, though, will be computed as the sheriff computes it." The defendant would be on supervised probation after serving six months.

We must remand for the purpose of the trial court resolving the duplicity of judgment forms. Before doing so, however, we must address the issue of the forms containing no percentage of service declaration.

The sentencing law provides that trial courts "shall fix a percentage of the [misdemeanor] sentence which the defendant shall serve [before] the defendant shall be eligible for consideration for . . . rehabilitative programs [such as work release or furlough]." Tenn. Code Ann. § 40-35-302(d) (1997). This specified percentage of the whole sentence is to be served in "actual confinement." *Id*. However, "[i]f no percentage is expressed in the judgment, the percentage shall be considered to be zero percent (0%)." *Id*.

The DUI statute, however, provides that the minimum incarcerative sentence, as in the case of the 45-day sentence for second offense DUI in the present case, shall be served "day for day." Tenn. Code Ann. § 55-10-403(a)(1) (1998). Thus, assuming that the portion of the sentence that a misdemeanant under the general sentencing law must serve in "actual confinement" before becoming eligible for rehabilitative services equates to the "day for day" service contemplated by the DUI statute, the sentencing law's use of a percentage to express the actual confinement is incongruous with the DUI law's use of an expression in terms of a number of hours or days.

In the present case, neither judgment form indicates a percentage of the total sentence to be served in actual confinement as required by Code section 40-35-302(d). In the past, we have urged trial courts to assure that misdemeanor judgment forms are fully completed so that a zero percentage is not inserted by default. S*ee, e.g., State v. Russell*, 10 S.W.3d 270, 279 (Tenn. Crim. App. 1999); *State v. David W. Frazee*, No. 02C01-9809-CC-00291, slip op. at 6 (Tenn. Crim. App., Jackson, Oct. 25, 1999), *perm. app. denied* (Tenn. 2000); *State v. Rickey Hailey*, No. 02C01-9705-CR-00198, slip. op. at 6 (Tenn. Crim. App., Jackson, May 14, 1998). *See generally* Tenn. Code Ann. § 40-35-302(d) (1997).

In the present case, however, the judgment form does express an "actual confinement," or "day for day," period in terms of days. Moreover, the term of 45 days is the minimum mandatory "day for day" incarceration for second offense DUI. Our supreme court has determined that, although "DUI offenders must . . . be sentenced in accordance with the [Criminal Sentencing Reform] Act, the legislature has specifically excluded DUI offenders from the provisions of the Act when the application of the Act would serve to either alter, amend, or decrease the specific penalties provided for DUI offenders." *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). Clearly, imposing Code section 40-35-302(d)'s default provision for zero percentage of service would not only decrease but would eliminate in this case the operation of the DUI provision for a second-offense minimum, mandatory "day for day" sentence. Because *Palmer* forbids this result, we hold that the trial court's express provision in the judgment that the defendant shall serve 45 days "day

for day" is sufficient to express the actual confinement portion of the sentence, even though this portion is not expressed in terms of a percentage.

For the foregoing reasons, we affirm the trial court's judgment on the merits but not as to its form. We remand this cause to the trial court for entry of a conforming judgment.

_____
JAMES CURWOOD WITT, JR., JUDGE