IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 15, 2001 Session

## STATE OF TENNESSEE v. DANIEL O'NEIL CONNELLY

**Appeal from the Circuit Court for Dickson County**
**No. CR4518     Allen Wallace, Judge**

---

### No. M2000-01914-CCA-R3-CD - Filed November 6, 2001

---

The defendant, Daniel O. Connelly, appeals from his conviction of driving under the influence of an intoxicant (DUI) imposed after a bench trial in the Dickson County Circuit Court. He claims on appeal that the evidence is insufficient to support his conviction and that the trial court erred in overruling a pretrial motion to suppress any evidence that the state garnered following the defendant's warrantless arrest. After hearing oral arguments and reviewing the record, the parties' briefs, and the applicable law, we affirm the conviction.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

V. Michael Fox, Nashville, Tennessee, for the Appellant, Daniel O'Neil Connelly.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Suzanne M. Lockert, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

In the light most favorable to the state, the evidence presented in the defendant's bench trial showed that on the evening of October 16, 2000 Ms. Tesa Black was sitting on the front porch of her home near White Bluff when she saw a white truck fail to negotiate a curve in front of her house on Claylick Road and run into the ditch. She saw a man in or about the truck and saw no other occupants. Before the man removed the truck from the ditch and left the scene, she obtained the license number and reported by telephone the truck's description and license number to the police. She told the police that the driver may be intoxicated.

White Bluff Police Officer Johnny Blanks responded to the call and arrived at the scene. He noted that a vehicle had apparently plowed into the ditch but found no damage to property

or fixtures at the site. Via his radio, he learned that Dickson County Deputy Sheriff Mark Ward had found a white truck on the side of Highway 47 nearby, and Officer Blanks drove to Ward's location. He arrived approximately seven to thirteen minutes after receiving the original dispatch. When he arrived, he found Deputy Ward on the roadside near a parked white truck. The license number on the truck matched the number given to the police department by Ms. Black.

Having been dispatched to the scene of the accident near Ms. Black's house and while in route on Highway 47, Deputy Ward saw the white truck parked beside the highway approximately one-half to one mile from Claylick Road. When he pulled up to investigate, he noticed that the license number matched the number provided in the dispatch. The truck was damaged on the right front section. The truck's lights were on. Although the vehicle was not running, the keys were in the ignition switch. Registration records revealed that the defendant owned the white truck.

The defendant was standing near the truck holding a tire iron. When Deputy Ward approached, the defendant became "agitated" and responded to questions in an "irate manner." The officer noticed that the right front tire was flat. The rim of the wheel was bent, and there was mud on the front of the vehicle. The defendant denied being on Claylick Road earlier and denied driving the truck. He stated that his wife had been driving and had walked away from the scene to get help.

Deputy Ward smelled alcohol on the defendant's person and inside the truck, although he found no other evidence of alcoholic beverages inside the truck. He noticed that the defendant "was a little unsteady on his feet . . . [and] was very evasive in his answering." His speech "wasn't slurr[ed] to the point you couldn't understand him," but it was not "crisp and clear." The officer asked the defendant to perform three field sobriety tests. On the straight-line-walk-and-turn, the defendant took ten steps instead of the nine he was instructed to take and lost his balance on the turn. Deputy Ward indicated that, although three failures on the test are required in order to indicate intoxication, the defendant scored only two points. The defendant, however, failed to satisfactorily complete the one-leg stand. He lost his balance at the count of sixteen rather than holding the stance for the prescribed count of thirty. Although the defendant had indicated prior to the test that he had no injuries or disabilities, he said after losing his balance that he had a "pulled ligament." Officer Ward further testified that the defendant failed a test requiring him to touch the tip of his nose.

Based upon the defendant's poor performance on these tests and the deputy's "initial contact with [the defendant], his general demeanor, the way he was walking, his movements," the deputy believed that he was intoxicated and incapable of safely operating a motor vehicle. Deputy Ward testified that he did not believe that a crime was being committed in his presence when he "first arrived" on the scene, but after administering the field sobriety tests, he concluded that the defendant was guilty of DUI "based on everything [he] personally saw." At this point, Deputy Ward arrested the defendant.

Both Officer Blanks and Deputy Ward testified that they saw no one walking along the roadside as they drove to the truck's location. The defendant may have told Deputy Ward that his wife had walked down the highway toward Charlotte. The officer knew that she would have

found no "business or anything" for four or five miles in that direction, that in the opposite direction there "are residential areas and . . . stores a half mile" away, and moreover, there were houses with lighted porches within view of the site where the truck was parked.

After being transported to the sheriff's office, the defendant declined to sign a consent form for a breath alcohol test. He neither testified in his defense nor offered any other witnesses at trial. Based upon the evidence summarized above, the trial court found beyond a reasonable doubt that the defendant was driving the truck and that the circumstances showed that he was guilty of DUI. The trial judge said, "I've got a man sitting there on the side of the road in an intoxicated condition in a truck that he has control of and there's a question. They could have arrested him right there on the scene and forgot about that accident down there."

On appeal, the defendant first asserts that the evidence is insufficient to support his conviction because it fails to establish (1) that the defendant was driving or otherwise physically controlling a vehicle and (2) that he was intoxicated at the time. We disagree.

In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999). "A finding of guilt by the trial court shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." *Id.*; *see* Tenn. R. App. P. 13(e). The verdict accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978); *State v. Townsend*, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978).

Moreover, a verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal, *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973); *Anglin v. State*, 553 S.W.2d 616, 620 (Tenn. Crim. App. 1977), which the defendant has the burden of overcoming, *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

More significantly, where the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2782 (1979); Tenn. R. App. P. 13. This rule applies to findings based on both direct and circumstantial evidence. *State v. Thomas*, 755 S.W.2d 838, 842 (Tenn. Crim. App. 1988). Circumstantial evidence alone may be sufficient to convict one of a crime. *State v. Boling*, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992).

As is pertinent to the present case, a person commits DUI who drives or is in "physical control of any automobile or other motor driven vehicle on any of the public roads and highways . . . or while on . . . any . . . premises which is generally frequented by the public at large" while under the influence of any intoxicant. Tenn. Code Ann. § 55-10-401(a) (1997).

By alternatively defining DUI to include mere "physical control" of a motor vehicle, the legislature created a strict liability crime. *See State v. Turner*, 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996). To assess whether a defendant was in physical control of a vehicle for purposes of the DUI offense, a jury looks to the totality of the circumstances, including "the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, . . . the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved." *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993); *see Turner*, 953 S.W.2d at 215 ("[I]n enacting the driving while intoxicated statute, the legislature desired not only to prohibit the operation of a vehicle by an intoxicated individual, but also to remove from the inebriated the option of operating a vehicle.").

In our view, the state introduced ample evidence to show that the defendant was in physical control of his vehicle while it was parked alongside a public highway. Ms. Black testified that minutes before Deputy Ward found the defendant and his truck on the roadside, an apparently unaccompanied man drove the same truck into a ditch on Claylick Road. The defendant was standing next to the truck, preparing to fix a flat right front tire. Although the engine was not running, the key was in the ignition switch, and the truck's lights were on. The defendant owned the truck, and no one else was in or about the truck. The defendant's claim that his wife, who he said had driven the truck, was walking along the road to find help was not substantiated by the officers' observations and investigations.[1] Thus, the defendant was, but for his intoxication, able to drive or direct the use of his truck. Moreover, the evidence showed circumstantially that the truck was capable of being operated or moved. The fact that one of the tires was flat does not render it incapable of being operated for the purposes of Code section 55-10-401(a). *State v. Farmer*, 675 S.W.2d 212, 214 (Tenn. Crim. App. 1984) ("We take judicial notice of the fact that a car with a flat tire is capable of movement and thus continues to pose a threat to the safety of the public when it is under the control of an intoxicated driver.").

The trial judge concluded that the intoxicated defendant's physical control of his truck on the roadside provides a basis for convicting him of DUI. The record supports this conclusion.

We now address the defendant's claim that the evidence does not establish that he was intoxicated. To the contrary, the evidence amply supports the trial court's determination that the defendant was intoxicated. Although the evidence contained the results of no empirical tests to determine the defendant's blood-alcohol status, intoxication may be established by circumstantial evidence. *State v. Harless*, 607 S.W.2d 492, 493 (Tenn. Crim. App. 1980). Deputy Ward testified about a number of circumstances that pointed toward the defendant being intoxicated to the point that he was incapable of safely operating a motor vehicle. Indeed, in the light most favorable to the state, the evidence showed that, minutes before being discovered on the roadside by Deputy Ward, the defendant failed to negotiate a curve and drove his truck into a ditch. Also, the defendant failed sobriety tests, smelled of alcohol, and was unsteady on his feet.

---

[1] Even if the defendant's wife had driven the truck to the location on the side of Highway 47, the defendant was nevertheless in physical control of the truck when Deputy Ward arrived on the scene.

We conclude that the evidence in this case fully supports the determinations of the trial court that led to the defendant's conviction of DUI.

The defendant's remaining issue is his claim that, based on the dictates of Tennessee Code Annotated section 40-7-103 which governs warrantless arrests, the officer had no authority to arrest the defendant without a warrant for a DUI offense that occurred prior to or during the accident on Claylick Road. He argues in his brief that Officer Ward testified that the defendant "did not commit any misdemeanor in his presence, nor could [he] determine from [his] investigation at the scene of the accident whether anyone had committed a crime." (Emphasis in defendant's brief.) The defendant moved pretrial to suppress any of his statements or other evidence obtained by the police as a result of his warrantless arrest.

We need not fathom any merits of the defendant's claim that Officer Ward had no basis for a warrantless arrest for driving under the influence on Claylick Road, and we need not concern ourselves with whether the police obtained any evidence following the defendant's arrest. The record cogently illustrates that the intoxicated defendant's physical control of his truck on the side of Highway 47 violated Code section 55-10-401(a) and that the trial court at least alternatively relied upon this offense committed in the officer's presence as the basis for conviction. We attach no significance to the fact that Deputy Ward discerned no basis for arrest when he first arrived on the scene. A reading of his testimony plainly shows that he determined to arrest the defendant for DUI after making on-the-scene, personal observations, including his evaluation of the defendant's poor performance of field sobriety tests. At this point, he had probable cause to arrest the defendant for the offense committed in his presence.

Also, because the defendant misapprehends the factual premise supporting his conviction, his reliance upon *State v. Thad Thomas Folds*, No. 01C01-9308-CC-00278 (Tenn. Crim App., Nashville, Mar.3, 1995) is unavailing. In *Thad Thomas Folds*, the defendant's alleged DUI was not committed in the officer's presence when the officer discovered the unattended defendant's car in a roadside ditch. The police then located Folds at his home in an intoxicated condition. Thus, Folds was convicted of an offense that had allegedly occurred prior to the officer's intervention. In the present case, however, the defendant committed the offense of DUI while physically controlling his vehicle as the officer arrived on the scene.

There is no discernible error in this case. The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-5-