# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 25, 2007 Session

## STATE OF TENNESSEE v. PHILLIP DOYLE

### Appeal from the Criminal Court for Loudon County
### No. 10960      E. Eugene Eblen, Judge

### No. E2007-00235-CCA-R3-CD - Filed January 15, 2008

The defendant, Phillip Doyle, was convicted of driving under the influence (DUI), second offense, and violating the implied consent law. The trial court imposed a sentence of 11 months and 29 days, with all but 45 days suspended to probation. In this appeal, the defendant asserts that the evidence is insufficient to support his DUI conviction. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Richard L. Gaines, Knoxville, Tennessee, for the appellant, Phillip Doyle.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; J. Scott McCluen, District Attorney General; and Roger Delp, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant's conviction arises from an incident that occurred on November 5, 2003, in Lenoir City, Tennessee. On that day, Lenoir City Police Officer Joe Foster was working the early evening shift when he stopped for a break at the Pilot Oil Station. As he was standing outside the Pilot smoking a cigarette, he noticed the defendant drive into the parking lot and park his car in the space directly in front of Officer Foster. The defendant got out of the vehicle and entered the Pilot. Shortly thereafter, Trooper Daniel Ruskey arrived to refuel his cruiser. Trooper Ruskey went inside to pay for his gasoline, and then "he kind of came to the door and looked over at" Officer Foster and told him to stop the defendant when he came out of the Pilot.

When the defendant came outside, Officer Foster informed him that Trooper Ruskey wanted to talk to him. The defendant put some items in his vehicle and then went back into the Pilot, where he remained for several minutes.

Trooper Ruskey testified that he arrived at the Pilot to purchase gasoline at approximately 5:00 p.m. While inside paying for his gasoline, Trooper Ruskey observed the defendant place two cans of beer on the counter. Trooper Ruskey testified that at that point, "a wave or a wind of the smell of alcohol came and kind of hit [him]." He then decided to detain the defendant based on his conclusion that "this isn't just somebody that's had a drink and came in." Because he was busy trying to pay for his gasoline, he asked Officer Foster to detain the defendant. When he came outside, Officer Foster told him that the defendant had gone back into the Pilot. Trooper Ruskey went inside to look for the defendant and waited outside the restroom when he did not find the defendant. Approximately 20 minutes later, the defendant exited the restroom, and Trooper Ruskey escorted him outside. The defendant, who "was argumentative from the git-go," had bloodshot eyes, an unsteady gait, and the odor of alcohol emanating from his person. The defendant told the trooper he had "beers" to drink and that he was "not drunk . . . just intoxicated."

After determining that the defendant was indeed the driver of the vehicle parked in front of the Pilot, Trooper Ruskey asked him to perform field sobriety tests, including recitation of the alphabet, the one-legged stand, the walk and turn, and the horizontal gaze nystagmus. The defendant failed each test. When it became obvious to Trooper Ruskey that the defendant was "extremely intoxicated," he again asked the defendant if he had driven to the Pilot, and the defendant responded, "I drove here in the condition that I'm in right now." After placing the defendant under arrest, Trooper Ruskey found the keys to the defendant's vehicle in the defendant's pocket.

During cross-examination, Trooper Ruskey confirmed that he never saw the defendant inside his vehicle. He also conceded that he did not maintain visual contact with the defendant during the 20 minutes or so that the defendant was inside the Pilot after their initial encounter.

At the conclusion of the trial, the jury convicted the defendant of DUI and violating the implied consent law. In the second portion of the bifurcated proceeding, the jury determined that the defendant had been previously convicted of DUI and was, therefore, guilty of second offense DUI.

On appeal, the defendant posits that the evidence is insufficient to support his conviction of DUI. Although he concedes that he was intoxicated during the field sobriety tests, he contends that "[t]he proof of intoxication at the later time is too remote to contribute to guilt of operating a motor vehicle thirty minutes before." The State asserts that the evidence supports a finding that the defendant drove to the Pilot station while under the influence of alcohol.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92, 61 L. Ed. 2d 560 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003).

This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

Although a criminal offense may be established exclusively by circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973), an accused may be convicted exclusively on circumstantial evidence only when the facts and circumstances are so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, *State v. Crawford*, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *Crawford*, 470 S.W.2d at 613.

Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

A person commits DUI who drives or is in "physical control of any automobile or other motor driven vehicle on any of the public roads and highways . . . or while on . . . any . . . premises which is generally frequented by the public at large" while under the influence of any intoxicant. T.C.A. § 55-10-401(a) (2006).

By alternatively defining DUI to include mere "physical control" of a motor vehicle, the legislature created a strict liability crime. *See State v. Turner*, 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996). To assess whether a defendant was in physical control of a vehicle for purposes of the DUI offense, the trier of fact looks to the totality of the circumstances, including "the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, . . . the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved." *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993); *see Turner*, 953 S.W.2d at 215 ("[I]n enacting the driving while intoxicated statute, the legislature desired not only to prohibit the operation of a vehicle by an intoxicated individual, but also to remove from the inebriated the option of operating a vehicle.")

Here, Officer Foster saw the defendant drive his car into the parking lot of the Pilot station. The defendant went inside and while inside encountered Trooper Ruskey. Trooper Ruskey testified that the defendant, who was purchasing more beer, smelled so strongly of alcohol that the odor "hit" him like "a wave." When Trooper Ruskey encountered the defendant again approximately 20 minutes later, the defendant was "extremely intoxicated" and had the keys to his vehicle in his pants pocket. The defendant admitted to Trooper Ruskey that he had driven to the Pilot in an intoxicated state. In our view, this evidence is sufficient to support a conviction for DUI by driving while intoxicated. Moreover, in confining their arguments to whether the proof was sufficient to

support a finding that the defendant *drove* while intoxicated, both the State and the defendant have ignored the fact that a defendant may be found guilty of DUI when there is proof that he was in *physical control* of a motor vehicle while intoxicated. In this case, where the "extremely intoxicated" defendant had possession of the keys to his vehicle during the entire time he was at the Pilot station, the evidence is sufficient to support a conviction for DUI by physical control. *See State v. Butler,* 108 S.W.3d 845, 850 (Tenn. 2003) (finding the evidence sufficient to support a conviction for DUI where "the defendant was confronted by [a police officer] in the parking lot of Wal-Mart approximately one hundred yards away from his motorcycle with the motorcycle sparkplug in his hand"); *see also Lawrence*, 849 S.W.2d at 765; *Turner*, 953 S.W.2d at 215.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE