# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 1, 2003 Session

## STATE OF TENNESSEE v. BRENDA F. JONES

**Appeal from the Circuit Court for Madison County**
**No. 01-934     Donald H. Allen, Judge**

---

**No. W2002-00751-CCA-R3-CD  - Filed July 29, 2003**

---

The Appellant, Brenda F. Jones, was indicted by a Madison County Grand Jury for the offenses of vehicular homicide and driving under the influence of an intoxicant (DUI).  Following a jury trial, the Appellant was convicted of DUI but acquitted of vehicular homicide.  For the DUI conviction, the trial court sentenced Jones to eleven months, twenty-nine days, with sixty days confinement.  On appeal, Jones argues that a term of sixty days confinement is excessive because (1) the trial court's sentence reflects consideration of conduct for which Jones was exonerated, and (2) the trial court improperly applied enhancement factors and failed to apply relevant mitigating factors. After review of the record, we find merit to both issues.  Accordingly, we modify Jones' sentence to eleven months, twenty-nine days with service of twenty days confinement.

**Tenn. R. App. P. 3; Remanded for Modification of Sentence**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Jeff Mueller, Jackson, Tennessee, for the Appellant, Brenda F. Jones.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; P. Robin Dixon, Jr., Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

In the early morning hours of December 9, 2000, the Appellant was involved in an automobile accident, which claimed the life of Angie Adams.  The Appellant and a third passenger, Joseph Adams, were also injured in the accident.  According to the Appellant's testimony at trial, she had been home all evening with her two small children and, over the course of the evening,

consumed two mixed drinks. She went to bed around 12:30 a.m. but was awakened by the arrival of Robert Adams, his wife, Angie Adams, his brother, Joseph Adams, and their friend, Gerald Staples. The Appellant and Angie Adams were long-time friends. The Appellant testified that shortly after their arrival, Robert Adams requested that the Appellant drive Angie and Joseph Adams home. The Appellant stated that she was reluctant to do so because Joseph Adams was drunk and "very obnoxious." She finally agreed only because she felt sorry for Angie, who was crying and arguing with her husband. During the ride, the Appellant claimed that Joseph Adams was "behaving like a child" in the back seat of the car. According to the Appellant, immediately before the wreck, she had repeatedly asked Adams to

> sit back and buckle up . . . . And for a moment, he sat back. And then the next thing I know, the man has snatched me by the hair of the head and pulled me loose from the steering. And I put both my feet down on the floor trying to stop the car. I couldn't even see where we were going. . . . I don't know if I hit the gas and hit the brake at the same time or if I hit one.

At this point, the Appellant's vehicle left the roadway and struck several trees, which resulted in the death of Angie Adams.

Law enforcement arrived at the scene to find the Appellant, who seemed dazed and confused, outside the car. Joseph Adams was trapped in the back seat but continued to try to escape, despite requests from the deputies to remain in the car. He eventually freed himself from the wreckage and tried to leave the scene several times. Despite the obvious falsity of the statement, Adams told police that he was not present when the accident occurred. Police testimony described his behavior as uncooperative and belligerent. Both Adams and the Appellant were taken to the hospital for medical treatment. In addition, blood alcohol tests were performed and established that the Appellant's blood alcohol level was .10%. Testimony at trial indicated that, at the time of impact, the Appellant was traveling at a speed in excess of seventy miles per hour.

On December 3, 2001, a Madison County grand jury returned an indictment against the Appellant charging her with vehicular homicide and DUI.[1] At the February 12, 2002 trial, the jury found the Appellant guilty of DUI but acquitted her of vehicular homicide. After a sentencing hearing, the trial court sentenced the Appellant to a term of eleven months, twenty-nine days, all of which was suspended except for sixty days to be served in the Madison County Jail. The trial court also ordered that, while on supervised probation, the Appellant would be required to submit to an alcohol and drug assessment and monthly alcohol and drug screens. This timely appeal followed.

**Analysis**

On appeal, the Appellant asserts that the sentence imposed by the trial court was excessive. Specifically, the Appellant asserts that the trial court erred by: (1) considering the death of Angie

---

[1]The indictment also jointly charged Joseph Adams with vehicular homicide.

Adams, despite the fact that the Appellant was acquitted of criminal responsibility, and (2) misapplying various enhancement and mitigating factors. When an accused challenges the length, range, or manner of sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. The burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

DUI, first offense, is a class A misdemeanor. Misdemeanor sentencing is controlled by Tennessee Code Annotated § 40-35-302 (Supp. 2002), which provides, in part, that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). More flexibility is extended in misdemeanor sentencing than in felony sentencing. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998).

Our legislature has provided that a defendant convicted of first offense DUI "shall be confined . . . for not less than forty-eight hours nor more than eleven months and twenty-nine days." Tenn. Code Ann. § 55-10-403(a)(1) (Supp. 2002). In effect, the DUI statute mandates a maximum sentence for a DUI conviction, with the only function of the trial court being to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended. *State v. Combs*, 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996). Thus, the trial court's imposition of a sentence of eleven months, twenty-nine days is mandated by our legislature and is not improper.

The trial court imposed the eleven month and twenty-nine days sentence, with all but sixty days to be served on probation; thus, we are confronted with the question of whether such a period of incarceration is justified based upon the principles of sentencing and the nature and circumstances of the offense. *State v. Gilboy*, 857 S.W.2d 884, 889 (Tenn. Crim. App. 1993). Although otherwise entitled to the same considerations under the Sentencing Reform Act as a felon, the misdemeanor offender is not entitled to the presumption of a minimum sentence. *State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995) (citations omitted). Additionally, a misdemeanor sentence, as opposed to a felony sentence, contains no sentencing range. Moreover, the trial court was not required to make explicit findings on the record, as a sentencing hearing is not mandatory. Tenn. Code Ann. § 40-35-302. Accordingly, in misdemeanor cases, the trial judge, who is able to observe first-hand the demeanor and responses of the defendant while testifying must be granted discretion in arriving at the appropriate sentence.

## 1. Consideration of death of passenger

The Appellant first asserts that the trial court erred by considering, as a circumstance of the DUI offense, the death of Angie Adams when sentencing the Appellant, despite the fact that the Appellant was acquitted by the jury of any responsibility for Ms. Adams' death. The Appellant, relying on

*State v. David W. Andrews*, No. 02C01-9201-CC-00024 (Tenn. Crim. App. at Jackson, Jan. 20, 1993), argues that legal precedent precluded the trial court from considering the death of the victim in enhancing the Appellant's sentence. *See also State v. Dockery*, 917 S.W.2d 258, 262 (Tenn. Crim. App. 1995); *State v. James E. Brice*, No. 03C01-9605-CC-00189 (Tenn. Crim. App. at Knoxville, Dec. 3, 1996) (also holding that enhancement of a sentence based upon consideration of a charge for which a defendant is acquitted is improper). The Appellant's argument is misplaced. These cases have been overruled by our supreme court's decision in *State v. Winfield*, which specifically held that a sentencing court "may apply an enhancement factor based on facts underlying an offense for which the defendant has been acquitted, so long as the facts have been established in the record by a preponderance of the evidence." 23 S.W.3d 273, 283 (Tenn. 2000).

In the case before us, the trial court made numerous references throughout its ruling attributing Ms. Adams' death to the proximate result of the Appellant's conduct. Nonetheless, *Winfield* holds that the sentencing court, "must make a factual finding that a preponderance of the evidence supports application of the facts to establish the enhancing factor." *Id*. Notwithstanding the fact that no specific findings were articulated by the sentencing court, this court in *State v. Thomas Wayne Shield*, No. W2000-01524-CCA-R3-CD (Tenn. Crim. App. at Jackson, Jan. 4, 2002), held that the trial court's findings of fact can be "implicit in the trial court's remarks." Upon consideration of the record before us, we find that although the trial court failed to explicitly state its findings, we may infer that the court found these facts by a preponderance of the evidence and thus, consideration of Ms. Adams' death in setting the Appellant's sentence was not error.

## 2. Enhancement/Mitigating Factors

The Appellant challenges the trial court's application of two enhancement factors and the denial of three mitigating factors in imposing a sixty-day period of incarceration. After the sentencing hearing, the trial court applied enhancement factor (2), a previous history of criminal convictions or criminal behavior, and (17), the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114 (2), (17) (Supp. 2002).[2] As to mitigation, the trial court applied non-enumerated factor (13), finding that the Appellant had a consistent work history and no criminal record other than one speeding ticket. Tenn. Code Ann. § 40-35-113 (13) (1997). The court declined to give mitigating weight for remorse, expressing concern that the Appellant "really doesn't think that she's at all to blame, that she did nothing wrong out there that night, that all the blame should be laid off on Mr. Joey Adams." In addition, the court stated that confinement was necessary to avoid depreciating the seriousness of the offense "specifically, under the circumstances of this case."

---

[2]We note that all briefs and arguments submitted refer to these as enhancement factors (1) and (16); however, due to the recent renumbering of the enhancement factors, the correct designations are factors (2) and (17).

**A. Application of Enhancement Factors**

The Appellant contends that it was improper for the trial court to apply enhancement factor (2), a history of criminal convictions or criminal behavior, based upon the issuance of one speeding ticket. First, we would note that neither the pre-sentence report nor the proof at sentencing revealed an adjudication for speeding. An arrest or criminal charge does not constitute criminal behavior within the meaning of Tennessee Code Annotated § 40-35-114(2). *State v. Marshall*, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). Notwithstanding, prior criminal acts for which there has been no conviction may constitute "criminal behavior," if proven. *State v. Carico*, 968 S.W.2d 280, 288 (Tenn. 1998).

The proof of a speeding ticket was introduced by the State at trial, over objection, during cross-examination of the Appellant. The proof suggested that the Appellant was traveling either 42 or 47 mph in a 35 mph zone approximately two months after her charges in this case. No proof was introduced to establish that the Appellant either pled or was found guilty of speeding. Nonetheless, the Appellant admitted after lengthy questioning that she was "going a little over the speed limit apparently." Irrespective of this admission, we are reluctant to find that a single speeding ticket constitutes criminal behavior so as to permit enhancement of the sentence. The goal of individualized sentencing and fashioning a sentence to fit the offender would be lost if the speeding defendant, which would be virtually every defendant, would be placed on equal status with the convicted felon upon application of enhancing factor (2).[3] Moreover, we note that the trial court applied mitigating factor (13), based, in part, upon the Appellant's "absence of prior criminal record . . . except this speeding ticket," while at the same time applying enhancing factor (2) because of the speeding ticket. In sum, we find that application of enhancing factor (2), based upon a single speeding infraction, is entitled to little or no weight and is insignificant in the sentencing determination.

The Appellant next challenges the trial court's application of enhancement factor (17), the crime was committed under circumstances under which the potential for bodily injury to a victim was great, because she contends that this factor is inherent in the offense of DUI. The trial court applied and gave this factor great weight noting that "when you take a person who's had some drinks - - mixed drinks who gets behind the wheel and speeds to that extent, obviously that person can place other individuals in great risk of being injured or seriously injured or killed." In addition, the trial court appeared to base the application of this factor on the danger faced by the Appellant's children, whom she left at home with her drunken boyfriend, while she left to take her guests home.

In *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002), our supreme court observed that "there is nothing in the statutory language of the enhancement factor [17] to indicate that it applied to potential victims or that it applies simply because the offense was committed in the presence of other

---

[3] Federal sentencing guidelines provide that sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted: hitchhiking, juvenile status offenses and truancy, loitering, minor traffic infractions (*e.g.*, speeding), public intoxication, and vagrancy. 18 U.S.C.S. Appx. § 4A1, 2(c)(2) (2003).

individuals." The court further compared enhancement factors (11) and (17), noting that the former is broadly written to include "risk to human life," and it does not contain restrictions to "the crime" and "a victim" that are contained in Tennessee Code Annotated § 40-35-114(17). The statutory distinctions must be given proper effect to determine which factor is applicable or whether both are applicable. *Id*. at 707. From this reading of *State v. Imfeld*, we conclude that factor (17) can only be applied in cases involving crimes with a specific victim. As the crime of DUI is one lacking a named victim, we find that it was error to apply this factor.

However, upon *de novo* review, we find that factor (11), no hesitation about committing a crime when the risk to human life was high, is applicable in this case. Tenn. Code Ann. § 40-35-114 (Supp. 2002). The trial court specifically declined to apply this factor finding it to be inherent in the DUI statute. However, this court has previously held that the factor may be applied in DUI cases if the proof establishes, by a preponderance of the evidence, "'that other persons or motorists were either in the vicinity or placed at risk by Defendant's conduct.'" *State v. Philip R. Haven*, No. M2001-00332-CCA-R3-CD (Tenn. Crim. App. at Nashville, July 18, 2002) (quoting *State v. Janice Carol Biskner*, No. E2000-01440-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Nov. 13, 2001)). On the record before us, we find that such proof was established. Both Angie Adams, even absent consideration of her death, and Joseph Adams were clearly placed at great risk by the Appellant's conduct of driving the car while intoxicated.

We also find improper the trial court's reliance upon the fact that confinement was necessary to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1)(B) (1997). Case law holds that this provision is only to be applied when the circumstances surrounding the commission of the crime are "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). The facts of this case, while tragic, do not support such a finding.

**B. Mitigating Factors**

The Appellant argues that the trial court should have applied mitigating factors (3), substantial grounds existed tending to excuse or justify the defendant's criminal conduct; (9), the defendant assisted authorities in uncovering offenses committed by others; and (11), the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. Tenn. Code Ann. § 40-35-113(3), -(9), -(11). We find no merit to these contentions.

With regard to factor (3), the Appellant argues that it should apply because she had no intent to commit the crime of DUI but only drove at the urging of Ms. Adams, who was fighting with her husband and wanted to go home. In the Appellant's words, she was "trying to do a good deed." We find the Appellant's argument misplaced because the offense of DUI is a strict liability offense; thus, there is no requirement that an intent to violate the law existed. *State v. Turner*, 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996). This issue is without merit.

The Appellant argues that factor (9) should have been applied because she gave the police an accurate depiction of the events which occurred in the car prior to the accident and that this led to an investigation and indictment of Joseph Adams for his acts. The trial court disagreed, finding that the Appellant did not "necessarily assist[] the authorities in uncovering offenses committed by someone else. . . . [The decision to charge Mr. Adams] was based upon the Officer's investigation and not based upon any assistance provided by the defendant." Upon *de novo* review, we agree with this finding. Thus, we find no error.

The Appellant further argues that mitigating factor (11), it is unlikely that a sustained intent to violate the law motivated the criminal conduct, should have been applied because she only committed the crime at the "desperate request" of Angie Adams. The trial court denied application of the factor, finding that it was not an emergency situation which required the Appellant to drive; rather, she drove the automobile knowing that she was intoxicated. Again, we find this mitigator inapplicable based upon the holding of *Turner*, 953 S.W.2d at 215 (holding that DUI is a strict liability offense which requires no intent to violate the law). This issue is without merit.

We agree with the trial court's application of mitigating factor (13) based upon the Appellant's family ties, work ethic, and lack of criminal history. The record established that the Appellant has four children, two of which are small and live with her, and that she has strong family ties to the community. She has an excellent history of employment. Even when the Appellant was laid off from her factory job, she cleaned houses in order to provide for her family. These facts weigh positively in the Appellant's favor.

**Conclusion**

Following *de novo* review and after consideration of the principles of sentencing, the nature and circumstances of the DUI offense, and mitigation proof favoring the Appellant, we conclude that a term of twenty days confinement in the county jail is appropriate. Accordingly, we modify the manner of service of the Appellant's sentence to reflect a sentence of eleven months and twenty-nine days, with twenty days confinement in the local jail. In all other respects, the sentence and special conditions imposed by the trial court are affirmed. This case is remanded for modification of the Appellant's sentence consistent with this opinion.

_____

DAVID G. HAYES, JUDGE