IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs January 25, 2022

**STATE OF TENNESSEE v. JACADY DWIGHT TERRY**

**Appeal from the Criminal Court for Monroe County**
**No. 17-220     Sandra Donaghy, Judge**

_____

**No. E2021-00406-CCA-R3-CD**

_____

The Defendant, Jacady Dwight Terry, was convicted by a jury of violating the motor vehicle habitual offender ("MVHO") law, for which he received a five-year sentence. On appeal, the Defendant argues that the trial court erred (1) by admitting the MVHO order into evidence because it was void; (2) by concluding that the MVHO violation was a strict liability offense and declining to give a mens rea instruction; and (3) by refusing to apply the "lesser penalty" provision of the criminal savings statute to the Defendant's sentence.[1] Following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., J., joined. JAMES CURWOOD WITT, JR., J., concurring in results only.

Robert L. Jolley, Jr., Knoxville, Tennessee, for the appellant, Jacady Dwight Terry.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Shari L. Tayloe, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

On July 5, 2017, the Monroe County Grand Jury returned an indictment against the Defendant, charging him with driving after having been declared a MVHO. Specifically, the indictment charged as follows:

---

[1] We have reordered the issues from how they were presented in the Defendant's brief.

[The Defendant] on or about the 20th day of April, 2017, in Monroe County, Tennessee, . . . did unlawfully and feloniously operate a motor vehicle on the public roads and highways of Monroe County, Tennessee, while an order of the Criminal Court of Monroe County, prohibited him from doing so, said order being dated the 26th day of September, 2011, signed by Judge Amy Reedy of the Criminal Court of Monroe County, and said order finding that the [D]efendant is a Habitual Offender as defined in 55-10-616, Tennessee Code Annotated, contrary to T[ennessee] C[ode] A[nnotated section] 55-10-616, all of which is against the peace and dignity of the State of Tennessee.

The matter proceeded to a jury trial on April 16, 2019.[2]

Before the jury was sworn, the State made a motion to remove the word "feloniously" from the indictment prior to its being read to the jury. Over the objection of the Defendant, the trial court granted the State's motion, reasoning that the word felonious was an unnecessary comment on the possible penalties for the offense. Once the jury was sworn, the indictment was read, minus the word feloniously, and the trial proceeded.

A. Trial. Narcotics Investigator James Wall with the Monroe County Sheriff's Office ("MCSO") testified that on April 20, 2017, he was driving down Highway 68 in his white Dodge Charger accompanied by MCSO Officer Angelina Kelley. Officer Wall described his Charger as "pretty recognizable as a police vehicle," despite its being unmarked, due to the emergency equipment visible on the car. Officer Kelley explained that they were out patrolling that day and performing "security checks, . . . checking on abandoned houses," things of that nature.

Around 4:40 p.m., while Officer Wall was driving on Highway 68 towards Tellico, he saw a white Toyota Scion "coming off of Old State Road and not hesitating at the stop sign." According to Officer Wall, the vehicle "[j]ust completely drove through" the intersection and onto Countryside Lane. At that time, it was daylight and the weather conditions were clear. However, Officer Wall was unable to observe the driver or any occupants of the vehicle from his vantage point. Officer Wall indicated that other vehicles were present on the road that day, recalling that he "passed a few."

Once at the intersection where he saw the white Scion run through the stop sign, Officer Wall turned onto Countryside Lane in an effort to follow the vehicle. After catching up to the vehicle, Officer Wall saw the car run a second stop sign at the intersection of Countryside Lane and Scenic View Road. When the white Scion turned right onto Scenic View Road, Officer Wall activated his emergency equipment and pursued

_____

[2] From comments made at the sentencing hearing, it appears that this was the Defendant's second trial for this offense.

the vehicle. Officer Wall indicated that the car was travelling at a high rate of speed and appeared to be trying to get away from him. The vehicle ultimately yielded, and Officers Wall and Kelley conducted a traffic stop. At trial, Officer Kelley also provided similar details of the events leading to the traffic stop, confirming that she saw the Scion travel through two stop signs without yielding and estimating that the events leading up to the stop lasted less than five minutes.

Officer Wall approached the driver's side of the vehicle, where he came into contact with the Defendant. Officer Wall also observed two females inside the car—Jennifer Harris, a front-seat passenger, and Melissa Waters, a rear-seat passenger. According to Officer Wall, he was familiar with all of the occupants of the car. Officer Wall indicated that he had prior knowledge that the Defendant's license was not valid and that he was suspicious that the Defendant's license was not current.

Officer Wall advised the Defendant why he had stopped him and inquired about the validity of the Defendant's driver's license. The three occupants were removed from the vehicle. According to Officer Kelley, Officer Wall indicated to her that they had received consent to search, so she proceeded to search the two female passengers and the vehicle. Officer Kelley indicated that she found a small amount of narcotics in the backseat of the vehicle, as well as in the passenger seat, finding the drugs inside a purse and a flashlight. Officer Kelley confirmed that the Defendant was the driver of the Scion and that no drugs were found on his person.

Officer Wall determined that the car belonged to Ms. Harris and that she had a valid driver's license, so the group was allowed to leave with Ms. Harris driving. No citations were issued at that time. Officer Wall explained that he used his discretion as to whether write tickets or arrest anyone and that in this case, he "felt that . . . [he] had stopped the dangerous activity and [that he] wanted to look further into [the Defendant's] . . . driving record." Officer Kelley agreed that it was standard operating procedure in conducting a traffic stop to get identification and check the person's identity and driver's license status.

The State sought to introduce the September 26, 2011 order declaring the Defendant a MVHO through Officer Wall's testimony. The Defendant objected on hearsay grounds and argued that Officer Wall was "not qualified to testify about a court document." The trial court overruled the objection, stating merely that the State could "present its evidence in any order that" it chose. The order was entered into evidence after Officer Wall testified that he was familiar with the order and had seen it before.

The MVHO order was entered as Exhibit 1. The order reflected that in Case Number 11-087, the "cause came to be heard" on September 26, 2011, and that Judge Amy Reedy, after reviewing the record, found that the Defendant was a MVHO as defined in Tennessee Code Annotated section 55-10-603, the Defendant's "having been convicted of crimes

noted in the [p]etition during the period of time noted in the [p]etition." Judge Reedy ordered that because the Defendant was a MVHO, the Defendant was "barred from operating a motor vehicle on the highways of the State of Tennessee," and he had to surrender his license to the Clerk of the Court. It was stated therein that a copy of the order, together with any driver's license, was to be transmitted to the Department of Safety. The order was signed by Judge Reedy and approved for entry by an Assistant District Attorney General. There was a certificate of service signed by the same Assistant District Attorney, indicating that a copy of the order had "been served upon counsel for all parties" that same day.

In addition to the order, Officer Wall confirmed that about thirteen days after the traffic stop, on May 3, 2017, he obtained a certified copy of the Defendant's driving record, which further confirmed his suspicions regarding the Defendant's driving status. Officer Wall then sought an indictment against the Defendant for a violation of the MVHO Act. A redacted copy of the Defendant's driving record was entered into evidence as Exhibit 2, and it reflected that the Defendant's license status was "revoked, habitual."

That concluded the State's proof. Defense counsel then moved for a judgment of acquittal, arguing that the State had failed to offer "any appropriate proof . . . of a judgment of [the Defendant's] being a habitual motor vehicle offender." Defense counsel noted that the MVHO order was entered through Officer Wall and that no clerk was called. Defense counsel also submitted that there were "inaccuracies" in the order because it indicated that the Defendant had counsel at the MVHO proceedings, but that he did not. Defense counsel further argued that the proof and the indictment varied because the MVHO order referenced Tennessee Code Annotated section 55-10-603 in support of its conclusion that the Defendant was a MVHO, but that the indictment said that the order found the Defendant to be a MVHO as defined in section 55-10-616. Finally, defense counsel contended that the trial court erred by allowing the State to strike the word feloniously from the indictment, which thereby, in defense counsel's opinion, removed any reference to a required mens rea element of intentionally, knowingly, or recklessly; defense counsel extrapolated that there was "no offense charged" in the indictment.

The State, in responding to the Defendant's argument that the MVHO order was invalid, indicated that the Defendant "filed a motion in the original civil proceeding where he was declared [a MVHO]" and that there was hearing. The State observed the following:

> Your Honor heard argument. Part of the proof, Your Honor, was a subsequent conviction of [the Defendant] for violating the [MVHO] Act. Your Honor, in your opinion or in your ruling stated that he had sufficient notice that he was declared a[ MVHO]. So even though the original order had issues, Your Honor after that hearing determined that that order was valid because he had sufficient notice of being declared [a MVHO].

- 4 -

The State also submitted that (1) the Defendant had been put on notice of the offense charged by the indictment regardless of any error in citing the appropriate statute defining a MVHO because the correct statute proscribing the offense was referenced, that being section 55-10-616, and (2) removal of the word feloniously was proper because it indicated possible punishments and there was "no requirement of feloniousness as an element of the offense."

Addressing the Defendant's first argument that the MVHO order was invalid or "inaccurate in that the [D]efendant was not represented" by counsel, the trial court observed that the issue of any "inaccuracy or any fallacies" in the MVHO order "ha[d] been settled by the litigation that occurred" in the MVHO proceeding (Case 11-087). The trial court noted that it had entered an order on July 23, 2018, in that case, addressing the Defendant's arguments. The trial court read from pertinent parts of the order denying the Defendant's motion to set aside the MVHO order declaring him a habitual offender:

> It says after hearing argument of counsel and review of the relevant law the [c]ourt finds that the order declaring the [D]efendant a [MVHO] does not comport to Rule 58 of the Rules of Civil Procedure. The [c]ourt further finds that the [D]efendant pled guilty to violation of the [MVHO] Act on October 25, 2012, and did not file his motion to set aside until April 30, 2018. The [c]ourt finds that . . . the [D]efendant's motion was filed unreasonably late and that he had actual notice of the initial order declaring him a[ MVHO.][3]

The trial court concluded that this prior order governed the "collateral" issue.

The trial court next addressed the Defendant's issue that the indictment referenced the wrong statute defining a MVHO, citing section 55-10-616, when the correct statute defining a MVHO, section 55-10-603, was correctly referenced in the September 26, 2011 MVHO order. The trial court determined that any issue in the proof and the indictment amounted to an "insignificant variance" and that the language describing a MVHO in the indictment was "surplusage" to the offense.

Relative to the Defendant's argument regarding removal of the word feloniously from the indictment and the lack of any mens rea element, the trial court found that the offense statute, section 55-10-616, did not contain a mens rea element, that the offense was a strict liability type of offense, and that taking out the word feloniously did not "change

---

[3] Though the trial court was apparently reading from a certified copy of the order, it further indicated that a copy of that order would not be entered into evidence in these proceedings.

the crime." The trial court noted that it would follow the pattern jury instructions setting forth the offense.

The trial court concluded that the Defendant's issues were without merit and that the evidence, in the light most favorable to the State, was sufficient for the case to be sent to the jury. After the motion for judgment of acquittal was denied, the parties discussed the jury charge.

During discussions on the jury charge, the Defendant argued that this was not a strict liability crime and requested that the court "charge the general intent statute of intentionally, knowingly, and recklessly" as the requisite mens rea. The State submitted that there was no mens rea element for the offense. Ultimately, the trial court declined the Defendant's request, stating, "I am following the pattern jury instructions in the instructions for this law." The trial court emphasized that Tennessee Code Annotated section 39-11-301 ("Requirement of culpable mental state.") did "not incorporate crimes charged" under Title 55 and that the legislature "chose to create this law in this fashion which d[id] not speak to a mens rea element."

Following the conclusion of proof, the jury charge, and closing arguments, the Defendant was convicted as charged. A sentencing hearing was held on June 17, 2019.

B. Sentencing hearing. At the hearing, the Defendant noted that on May 24, 2019, the General Assembly passed a bill which, in relevant part, provided that the entirety of the Tennessee Code dealing with MVHO laws (Title 55, Chapter 10, Part 6) was to be deleted and replaced with a single paragraph outlining the procedure for a MVHO to reinstate his or her license. See 2019 Tenn. Pub. Acts, ch. 486, § 3. That single paragraph provided,

> A person whose driver license has been revoked or restricted due solely to the person's status as a motor vehicle habitual offender prior to July 1, 2019, may petition the court that originally made such a finding to reinstate the person's driver license. Upon receiving a petition for a reinstated driver license, that after such a person petitions the court, the court shall determine whether the person's driver license was subject to revocation or restriction under prior law due solely to the person's status as a motor vehicle habitual offender and, if so, order the reinstatement of the person's driver license.

Tenn. Code Ann. § 55-10-601 (Supp. 2019). Though the Defendant observed that the effective date of the new law was not until July 1, 2019,[4] the Defendant argued that he

---

[4] See State v. Marvin Maurice Deberry, W2019-01666-CCA-R3-CD, 2021 WL 1561688, at *5-6 (Tenn. Crim. App. Apr. 21, 2021), perm. app. granted (Tenn. Sept. 23, 2021), engaging in a thorough examination of the legislative history and concluding that the intended effective date of the legislation was July 1, 2019.

should receive a punishment of zero years because the legislature had decided that individuals should not be punished for this offense. He reiterated that "under no circumstance[s] should [he] be incarcerated for something that [was] no longer an offense."

In addition, to support an increased range classification, a judgment form was entered reflecting that the Defendant pled guilty on October 25, 2012, to violating the MVHO Act.[5] Defense counsel indicated that the Defendant did not have notice of the MVHO order under the Rules of Civil Procedure, though defense counsel acknowledged that the trial court had held that the Defendant had sufficient notice of the order because he was later convicted of violating the MVHO order in October 2012.

The State contended that the criminal savings statute, Tennessee Code Annotated section 39-11-112 ("Repealed or amended statutes; prosecution."), was applicable here:

> When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. Except as provided under § 40-35-117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.

The State submitted, "That savings statute very clearly says that we have to look at the law at the time . . . the criminal offense occurred not at what the state of the law is subsequent." The State observed that the Defendant committed the crime when the MVHO Act was in full force and effect and that the new law removed the offense entirely. The State also emphasized that the repeal had not yet come into effect and that the Defendant had sufficient notice that he was a MVHO.

The trial court agreed with the State. The trial court held, "[T]he legislature . . . chose to make that law effective July 1. And so I think that one can infer from that act that they intended . . . the [MVHO Act] to remain in effect until July 1 when they repealed it." Relative to the Defendant's notice argument regarding the validity of the MVHO order, the trial court stated that though there was not "proper notice on the face" of the MVHO order, the Defendant came to court in 2012 and pled guilty to a violation of the MVHO Act. The trial court concluded, "[I]t is clear any conduct from that point forward gave him clear notice of this class E felony violation." Thereafter, the trial court sentenced the Defendant to five years as a Range III, persistent offender.

---

[5] Additional evidence of the requisite prior convictions to establish the Defendant's range classification was also entered.

C. Post-trial motions. On July 11, 2019, the Defendant filed a motion for new trial, alleging, among other things, that the trial court erred (1) "in allowing the State to amend the indictment to remove the language 'and feloniously,' after the jury was seated"; (2) "in allowing the introduction of Exhibit 1," the MVHO order, "when [the Defendant] had never been served with that judgment"; (3) "by not charging the jury on any criminal intent, making this a 'strict liability' offense"; and (4) in sentencing the Defendant to five years' incarceration because "the sentence violates [d]ue [p]rocess and the protection against cruel and unusual punishment when the entire [MVHO] Act has now been repealed," and because "[t]he legislature has ordered individuals previously declared to be [MVHOs] shall have this declaration reversed and their driving privileges reinstated." That same day, the Defendant also filed "Motion for Dismissal and Reduction of Sentence" pursuant to Tennessee Rule of Criminal Procedure 35. Therein, the Defendant noted that the new MVHO Act had become effective, and he argued that "[t]he interests of justice [were] best served by dismissing the conviction against [him] as that [was] consistent with the law currently in effect."

The Defendant later filed an amended motion for new trial on August 12, 2019. In this amended motion he alleged, in pertinent part, as follows:

> (1) The trial court erred in allowing the State to introduce Exhibit 1 and Exhibit 2 without calling appropriate witnesses to establish foundation, thereby violating [the Defendant's] constitutional right to confrontation.
> (2) The trial court erred in failing to grant [the Defendant's] Motion for Judgment of Acquittal when the State did not prove allegations in the indictment concerning Tenn[essee] Code Ann[otated section] 55-10-616.
> (3) The trial court erred in failing to grant [the Defendant's] Motion for Judgment of Acquittal when the State amended its indictment to no longer charge an offense.
> (4) The trial court should revise the punishment imposed in this case since the Tennessee legislature has abolished this offense and abolished any punishment for the commission of this offense, effective within [thirty] days of the [judgment].

The State filed a response to the Defendant's motion to dismiss, arguing that the "lesser penalty" provision of the savings statute did not apply to the facts of this case. Specifically, the State submitted that the Defendant was properly prosecuted under section 55-10-616 because he violated the law in effect at the time of the offense and that "[b]ecause no penalties were altered by the legislature's repeal, the entitlement to a reduced penalty provided for by" section 39-11-112 was inapplicable. In addition, the State contended that no equal protection violation occurred "when the Defendant [was] prosecuted for actions which were, at the time of commission, a crime because the statute's

operation create[d] no unreasonable classification." The State also filed a response to the Defendant's motion for new trial, reiterating similar arguments.

A hearing on the motions took place on March 23, 2021.[6] At the hearing, the Defendant noted that the MVHO Act he was convicted and sentenced under had since been repealed. Thus, the Defendant submitted,

> [A] prison sentence that was given for a conviction for this act is cruel and unusual punishment and a violation of due process since the legislature has determined as of the time that we filed this motion that the only thing that should happen is for the [MVHO] to have the declaration [reversed] and they're eligible for reinstatement.

The Defendant asked the trial court to either reduce his sentence or dismiss the case altogether because the repeal of the MVHO Act "occurred during the time that [the Defendant's] sentencing was active and that [the case was] still within the motion for new trial period."

Relative to the repeal of the MVHO Act, the State noted that the Defendant was indicted with this offense two years prior to the repeal of the MVHO Act. According to the State, the first sentence of the criminal savings statute allowed for the Defendant to be prosecuted pursuant to law in effect at the time of the offense. The State further asserted that "because the [A]ct was repealed and not the punishment for it reduced or changed, then the punishment at the time that the crime [was] in effect [was] what the [c]ourt ha[d] to consider," which was what it did. The State continued, "So because the legislature didn't [alter] the penalties, he's not entitled to any relief from the sentence that the [c]ourt gave."

The Defendant, in turn, argued that under the law now in effect, the penalty for a MVHO violation was an administrative remedy, which was still a penalty, but of a different type. Accordingly, the Defendant submitted that because an administrative penalty was a lesser penalty, he should be entitled to that lesser penalty under the savings statute and not incarcerated.

Following arguments, the trial court addressed the Defendant's various complaints, beginning with his issues relating to instructing the jury on a mens rea element, notice of the original MVHO order, and removal of the word felonious from the indictment. The trial court observed that neither the MVHO Act nor the pattern jury instructions included a mens rea and indicated that the offense was a strict liability offense in the sense that if one were declared a habitual motor vehicle offender and operated a vehicle while that order was in effect, then that person had violated section 55-10-616. The trial court further noted

---

[6] The hearing on these motions was reset several times due in part to the COVID-19 pandemic.

that a new opinion issued by this court had discussed the word feloniously being synonymous with intentional and that the Defendant engaged in the intentional conduct of driving a vehicle. The trial court also found that the Defendant had knowledge that he had been declared a MVHO, regardless of whether he was served with the original September 26, 2011 order, because he had subsequently been charged and convicted of a violation. Ultimately, the trial court determined that removal of the word feloniously from the indictment "inure[d] to the [D]efendant's benefit" because it suggested a punishment and that its removal did "not convert the charging language to something that [was] not supported by the law."

The trial court then discussed the application of the savings statute to the Defendant's case. Relative to the first sentence of the savings statute, the trial court summarized, "[W]hen a statute is repealed, a defendant who committed an act criminalized by that statute prior to its [repeal] shall be prosecuted as if that statute were still in effect"; the trial court noted that procedure was followed here. Next, the trial court did not find the Defendant's argument that the administrative remedy of getting one's license reinstated or the complete elimination of a penalty from the same criminal conduct was a lesser penalty for purposes of the second sentence of the savings statute. The trial court reasoned that "[t]he statute was merely repealed leaving no penalty for the conduct" and that "[t]he charge of driving while the restriction [was] in effect was not decriminalized retroactively." The trial court also rejected the Defendant's equal protection argument, finding that the Defendant had not "been singled out to the exclusion of others" and that the repeal of the statute treated all persons within the class similarly. Finally, the trial court determined that "the prison sentence under these circumstances [was] what [was] required by our legislative scheme" and that it did not amount to cruel and unusual punishment.

Relative to whether it was error to introduce a redacted version of the Defendant's driving record, the trial court accredited "the State's recollection that the driving record was redacted to show the present status of his license or the status of his license on the day of the offense as opposed to going through a litany of prior traffic convictions." The trial court denied the Defendant's motion for new trial, and a written order reflecting such was filed on April 26, 2012.

Addressing the Defendant's Rule 35 motion at the motion for new trial hearing, the trial court noted the Defendant's argument that the trial court had continuing jurisdiction to modify the sentence, but it declined to reduce the sentence "for the reasons stated on the record."[7] The Defendant timely, albeit prematurely, filed a notice of appeal.

---

[7] No separate written order was filed addressing the Rule 35 motion.

ANALYSIS

On appeal, the Defendant argues that (1) the trial court erred in admitting the void MVHO order into evidence at trial; (2) the trial court erred in finding the MVHO offense to be a strict liability offense and in denying the Defendant's request for a jury instruction on intent; and (3) the trial court erred in refusing to apply the "lesser penalty" provision of the criminal savings statute when sentencing the Defendant. We will address each in turn.

*I. Admission of MVHO Order*

The Defendant alleges that the trial court erred in admitting the void MVHO order (Exhibit 1) into evidence at trial. He cites to the standard for review of a trial court's ruling on a Tennessee Rule of Civil Procedure 60.02 motion to set aside a judgment as void and asserts that "the trial court erroneously found [his] challenge of the void MVHO order to be unreasonably late and failed to determine whether the State had a substantial interest in reliance on the void order." The State responds that the Defendant has waived any challenge to the admission or alleged voidness of the MVHO order based upon various procedural deficiencies.

Rule 60.02 permits a trial court to set aside a void judgment. Tenn. R. Civ. P. 60.02(3). "[W]hen determining whether a judgment is void, a court must confine its review to the record of the proceeding from which the judgment emanated." Turner v. Turner, 473 S.W.3d 257, 275 (Tenn. 2015). The alleged defect must be "apparent from the face of the judgment or the record of the proceeding." Id. at 271. Otherwise, "the judgment is merely voidable, not void." Id. Moreover, "the reasonable time filing requirement of Rule 60.02 does not apply to petitions seeking relief from void judgments under Rule 60.02(3)[,]" and such challenges may be made at any time. Id. at 260. A trial court's ruling on a Rule 60.02 motion is reviewed for an abuse of discretion. See Discover Bank v. Morgan, 363 S.W.3d 479, 487 (Tenn. 2012).

As substantive grounds for the MVHO order's being void, the Defendant relies on Tennessee Rule of Civil Procedure 58, which governs entry of judgments. Rule 58 provides that one of the following criteria must be met for "a judgment or an order of final disposition [to become] effective": (1) the signatures of the judge and all parties or counsel; (2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel; or (3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.

At trial, the State sought to introduce the MVHO order through Officer Wall's testimony. The Defendant objected on grounds of hearsay and that Officer Wall was "not qualified to testify about a court document." The trial court overruled the Defendant's

objection, and the order was entered into evidence after Officer Wall testified that he was familiar with the order and had seen it before.

During the motion for judgment of acquittal, defense counsel contended that the State had failed to offer "any appropriate proof . . . of a judgment of [the Defendant's] being a [MVHO]." Defense counsel noted that the MVHO order was entered through Officer Wall and that no clerk was called. Defense counsel also submitted that there were "inaccuracies" in the order because it indicated that the Defendant had counsel at the MVHO proceedings, when in fact he did not. This was the first time defense counsel made any comments expressing doubt in the validity of the order itself. At that time, the State responded that the Defendant had "filed a motion in the original civil proceeding where he was declared [a MVHO]" (Case 11-087), that there was a hearing on that motion, and that the trial court had determined that the "order was valid because [the Defendant] had sufficient notice of being declared [a MVHO]."

In denying the Defendant's motion for a judgment of acquittal, the trial court observed that the issue of any "inaccuracy or any fallacies" in the September 26, 2011 MVHO order "ha[d] been settled by the litigation that occurred" in the MVHO proceeding (Case 11-087) and that it had entered an order on July 23, 2018, in that case, addressing the Defendant's arguments. The trial court read from pertinent parts of the order denying the Defendant's motion to set aside the MVHO order declaring him an habitual offender, though it stated that a copy of that order would not be admitted into evidence in these proceedings. Reading from that prior order entered in Case 11-087, the trial court concluded that the MVHO order did not comport with Tennessee Rule of Civil Procedure 58. However, the trial court noted that the Defendant pled guilty to a violation of the MVHO Act on October 25, 2012, and did not file his motion to set aside until April 30, 2018; so, it concluded that the Defendant's motion was filed unreasonably late, that he had actual notice of the initial order declaring him a MVHO, and that he was not entitled to relief.

First, we note that the Defendant raised only an evidentiary objection at trial on grounds of hearsay and authentication. On appeal, he has failed to raise those grounds or brief them, and therefore, any objection in that regard has been waived. See Tenn. R. App. P. 27(a); Tenn. Crim. App. R. 10(b). Next, the Defendant did not express any concern with the validity of the MVHO order itself until the motion for judgment of acquittal phase. However, the record does not contain the Defendant's motion based upon Tennessee Civil Rules of Procedure 58 and 60.02 to set aside the MVHO order that he filed in Case 11-087, the transcript of the hearing that took place on that motion, or a copy of the trial court's complete order on the matter. All of those documents are contained in Case 11-087. Indeed, during the judgment of acquittal, the trial court noted that it had a copy of the order but that it would not be admitted into evidence. When the record is incomplete, an appellate

court is precluded from considering the issue. See State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

Regardless, we observe that the Defendant is attempting to revisit the collateral proceedings regarding the validity of the MVHO order in Case 11-087 through an evidentiary objection. In State v. Orr, the defendant complained that the length of time he was barred from operating a motor vehicle by the trial court's MVHO order was vague and by implication, at least, that that made the statute vague. 694 S.W.2d 297, 298 (Tenn. 1985). Our supreme court held, "[T]he adjudication of defendant as [a MVHO] offender became final thirty days after its entry and he did not perfect a timely appeal therefrom, and, of course, cannot be heard to complain of such an alleged infirmity in the order upon this appeal." Id.

Moreover, this court has consistently held that a defendant cannot collaterally attack an order declaring him to be a MVHO. See Davis v. State, 793 S.W.2d 650, 651 (Tenn. Crim. App. 1990); Everhart v. State, 563 S.W.2d 795, 797-98 (Tenn. Crim. App. 1978). Instead, "the appropriate procedure for challenging a [MVHO] order is to file a motion pursuant to Tennessee Rule of Civil Procedure 60.02." State v. Ernest Michael Turner, No. W2006-02661-CCA-R3-CD, 2008 WL 1700338, at *5 (Tenn. Crim. App. Apr. 4, 2008) (citing Bankston v. State, 815 S.W.2d 213, 216 (Tenn. Crim. App. 1991)). Under these principles, any complaint about the validity of the MVHO order must fail in this proceeding. Likewise, the Defendant has not perfected a timely appeal from the proceedings in Case 11-087.

Finally, we feel constrained to observe that the MVHO order, entered at trial as Exhibit 1, on its face meets the requirements of Rule 58. The MVHO order was signed by Judge Reedy and the Assistant District Attorney General with a certificate of counsel from the Assistant District Attorney General that a copy of the order was "served upon counsel for parties." The Defendant had pled guilty to violating the MVHO order previously and consequently had notice of the order. The Defendant's arguments are unavailing.

*II. Mens Rea Element and Jury Instruction*

The Defendant argues that "the trial court erred in finding the MVHO offense to be a strict liability felony and in denying [his] request for a jury instruction on intent." The Defendant cites to two cases from this court, State v. William Waylon Hanson, No. M2016-00502-CCA-R3-CD, 2018 WL 1150087, at *6 (Tenn. Crim. App. Mar. 2, 2018); and State v. James Stacy Carroll, No. W2003-01182-CCA-R3-CD, 2004 WL 541130, at *2 (Tenn. Crim. App. Mar. 15, 2004), and contends that because the MVHO Act does not plainly dispense with a mens rea requirement, the applicable culpable mental states of intentional, knowing, or reckless are garnered from Tennessee Code Annotated section 39-11-301(b).

- 13 -

The Defendant further notes that the MVHO Act references "indifference" which is a characteristic of "recklessness." Tenn. Code Ann. § 55-10-602 (repealed 2019) (providing that it is "the policy of this state to . . . deny the privilege of operating motor vehicles on public highways to persons who by their conduct and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of the state"); "*Reckless*," BLACK'S LAW DICTIONARY 1385 (9th ed. 2009) (stating that the culpable mental state of recklessness is "characterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious . . . disregard for or indifference to that risk"). Thus, according to the Defendant, the trial court's finding that a violation of the MVHO Act is a strict liability felony is clear error, and it naturally follows that the trial court's failure to instruct the jury on any criminal intent was error.

The State responds that the statute codifying the offense of violating the MVHO Act, Tennessee Code Annotated section 55-10-616, is silent as to mens rea, and there is no omnibus statute establishing the general requirement of a mental state for offenses in Title 55. The State asserts that section 39-11-301 is inapplicable to offenses in Title 55, and the trial court correctly determined the offense to be strict liability in nature. The State submits that to the extent any prior opinion of this court stands for the proposition that section 39-11-301 is applicable to the MVHO violation statute, such as Hanson and Carroll, this court should overrule those cases. In addition, the State contends that section 55-10-602 simply established a general public policy for the State and did not impute a mental state to the criminal offense of driving after being declared an MVHO. Accordingly, in the State's opinion, the instructions were complete, and the trial court properly declined to include such an instruction. The State alternatively submits that even if the trial court did err, it was harmless beyond a reasonable doubt because the Defendant's defense did not center on his mental state, but rather Officer Hall exercised his discretion in allowing the Defendant to leave on the date of the incident and that the jury should not have allowed that discretion to be "taken back."

The Supreme Court of the United States has identified "'public welfare' or 'regulatory' offenses" which allow for "a form of strict criminal liability through statutes that do not require the defendant to know the facts that make his conduct illegal." Staples v. United States, 511 U.S. 600, 606 (1994). Criminal strict liability is defined as "[a] crime that does not require a mens rea element, such as traffic offenses and illegal sales of intoxicating liquor." "*Strict-Liability Crime*," BLACK'S LAW DICTIONARY 429.

In State v. Bobby G. McDonald, the defendant contended that the evidence was insufficient to support his driving on a revoked, cancelled, or suspended license conviction because the State failed to prove that he knew or should have known that his driver's license was revoked. No. 02C01-9206-CR-00126, 1993 WL 312698, at *3 (Tenn. Crim. App. Aug. 18, 1993). In McDonald, this court concluded specifically that the offense of driving

on a cancelled, suspended, or revoked license did not require any culpable mental state; thus, knowledge of the cancellation, suspension, or revocation was not an element required to support a conviction.  Id.  In so holding, the McDonald court reasoned as follows:

> . . . [T]he [defendant] relies upon Tenn[essee] Code Ann[otated section] 39-11-301(b) and (c) which provides as follows:
>
> (b) A culpable mental state is required within this title unless the definition of an offense plainly dispenses with a mental element.
> (c) If the definition of an offense within this title does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish culpable mental state.
>
> This section, by its own terms, applies only to offenses set forth in Title 39 of the Code.  The offense of driving on a revoked license is in Title 55 of the Code.  See Tenn. Code Ann. § 55-50-1504.  Therefore, Tenn[essee] Code Ann[otated section] 39-11-301 does not apply to the offense of driving on a revoked license.
>
> Even if Tenn[essee] Code Ann[otated section] 39-11-301 does apply to the offense of driving on a revoked license, that statute plainly dispenses with a mental element.  Tennessee Code Annotated [section] 55-50-504(a) provides that a person who drives a motor vehicle on a public highway at a time when his privilege to do so is cancelled, suspended, or revoked commits a misdemeanor.  There is absolutely no requirement that the defendant act with any culpable mental state in order to commit this offense.

Id.

This court has also held that driving under the influence ("DUI")—another Title 55 offense—is a strict liability offense.  See State v. Lawrence, 849 S.W.2d 761, 765-66 (Tenn. 1993); State v. Turner, 953 S.W.2d 213, 215-16 (Tenn. Crim. App. 1996).  In Turner, the defendant asserted that the crime of DUI[8] required an intent to operate a vehicle, likewise citing to Tennessee Code Annotation section 39-11-301(b), (c), in support of his argument.  953 S.W.2d at 214.  In determining the applicability of section 39-11-301 to the driving while intoxicated statute, the Turner court noted that this court had "previously observed that there is no culpable mental state required for guilt of driving under the influence."  Turner, 953 S.W.2d at 215 (citing State v. Cathy A. Fiorito, No. 03C01-9401-

---

[8]  The DUI statute provided, "It is unlawful for any person or persons to drive or to be in physical control of any automobile . . . on any . . . premises which is generally frequented by the public at large, while under the influence of any intoxicant[.]"  Tenn. Code Ann. § 55-10-401 (1993).

CR-00032, 1995 WL 695031, at *3-4 (Tenn. Crim. App. Nov. 27, 1995); State v. James Isaac Mabe, No. 03C01-9402-CR-00051, 1994 WL 583210, at *2 (Tenn. Crim. App. Oct. 25, 1994)). The Turner court further stated, "[C]onsidering our supreme court's decision in []Lawrence, 849 S.W.2d 761 [], the definition of the offense of driving under the influence 'plainly dispenses with a mental element.'" Id. (citing Tenn. Code Ann. § 39-11-301). Finally, in holding that DUI was a strict liability crime, the Turner court reasoned,

> We believe that an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist. The defendant when arrested may have been exercising no conscious violation with respect to the vehicle, still there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away.

Id. (quoting Lawrence, 849 S.W.2d at 765 n.2).

This court has consistently continued to apply the rationales of McDonald and Turner to defendants' arguments regarding the requirements of a mens rea element for the offenses of driving on a revoked, cancelled, or suspended license conviction and DUI. In addition, this court has also indicated that a culpable mental state is not required for the misdemeanor offense of leaving the scene of an accident, another Title 55 offense. See State v. James Alan Sheppard, No. M2002-01358-CCA-R3-CD, 2003 WL 21997737, at *2-3 (Tenn. Crim. App. Aug. 22, 2003).[9]

The Defendant also relies on section 55-10-602, claiming that its "use of 'indifference' make[s] it clear that the MVHO offense was not a strict liability felony." However, section 602 simply establishes a general public policy for the State to "[d]eny the privilege of operating motor vehicles on public highways to persons who by their conduct and record have demonstrated their indifference to the safety and welfare of others

---

[9] In Sheppard, the defendant was indicted and convicted pursuant to Tennessee Code Annotated section 55-10-101, which, at that time, provided,

> The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible, but shall then forthwith return to and in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of § 55-10-103. Every such stop shall be made without obstructing traffic more than is necessary. The requirements herein apply to accidents occurring upon highways and the premises of any shopping center, trailer park or any apartment house complex, or any other premises which are generally frequented by the public at large.

2003 WL 21997737, at *2-3.

and their disrespect for the laws of the state." Tenn. Code Ann. § 55-10-602. It does not impute a mental state to the criminal offense of driving after being declared an MVHO. Moreover, this policy espoused by section 55-10-602 supports our conclusion of strict liability because it indicates that the legistlature intended for this offense to likewise be a public welfare or regulatory offense with no mens rea.

In this case, we agree with the trial court that the offense of driving after being declared an MVHO as set forth in section 55-10-616 is a strict liability offense. The statute provides as follows: "It is unlawful for any person to operate any motor vehicle in this state while the judgment or order of the court prohibiting the operation remains in effect." Tenn. Code Ann. § 55-10-616(a) (repealed 2019). In accordance with the above line of cases for similarly defined traffic offenses, we conclude that section 39-11-301(b) does not apply to this offense. We further believe that the terms of this offense clearly dispense with a mens rea element based upon the rationales of McDonald and Turner, and to the extent that Carroll and Hanson conclude otherwise, we decline to follow those cases.

Because the trial court correctly determined that this MVHO Act violation was a strict liability offense, there was no error in its decision not to include a mens rea instruction in the jury charge. The proof showed that Defendant chose to drive and that this choice was the product of effort or determination; the Defendant did not have to intend to drive unlawfully. See Turner, 953 S.W.2d at 216 (noting that criminal liability requires the performance of a voluntary act). Relief is not warranted.

*III. Savings Statute*

On appeal, the Defendant notes that MVHO Act has been repealed and argues that he is entitled to the benefit of a lesser penalty under our criminal savings statute found at Tennessee Code Annotated section 39-11-112. The Defendant cites to four cases from this court in which we applied the lesser penalty provision to the repeal of the MVHO Act— State v. William C. Austin, Jr., No. W2020-01428-CCA-R3-CD, 2021 WL 4352745 (Tenn. Crim. App. Sept. 24, 2021), perm. app. filed (Tenn. Nov. 15, 2021); State v. George H. Person, No. W2020-00937-CCA-R3-CD, 2021 WL 2579862 (Tenn. Crim. App. June 23, 2021), perm. app. filed (Tenn. Aug. 11, 2021); State v. Anthony Lee Carter, No. W2019-02278-CCA-R3-CD, 2021 WL 2556650 (Tenn. Crim. App. June 22, 2021), perm. app. filed (Tenn. Aug. 11, 2021); and State v. Marvin Maurice Deberry, W2019-01666-CCA-R3-CD, 2021 WL 1561688 (Tenn. Crim. App. Apr. 21, 2021), perm. app. granted (Tenn. Sept. 23, 2021). The Defendant submits that the trial court erred in sentencing him to five years' incarceration and notes that his case was still "under the trial court's direct review when the repeal of the MVHO Act became effective."

The State, on the other hand, insists that the savings statue does not apply to the Defendant because he was sentenced prior to the effective date of the MVHO Act's repeal.

In support of its argument, the State cites to a recent case from our supreme court, State v. Keese, 591 S.W.3d 75, 84 (Tenn. 2019), for the proposition that the "language of the Criminal Savings Statute does not change the long-standing rule that a statute or act of the legislature cannot become operative until its effective date." According to the State, Keese unambiguously precludes the application of the savings statute where, as here, the sentence was imposed before the new legislation came into effect, regardless of whether the issue was raised in subsequent post-sentencing proceedings.

The Tennessee Supreme Court has recently addressed the application of the savings statute to an amendment to the statute delineating the gradation of theft offenses in three separate opinions. See State v. Tolle, 591 S.W.3d 539, 546 (Tenn. 2019) (determining the proper application of the savings statute to resentencing pursuant to probation revocation); Keese, 591 S.W.3d at 84 (determining the application of the savings statute to a sentence imposed prior to the amendment's effective date); State v. Menke, 590 S.W.3d 455, 468 (Tenn. 2019) (determining whether the theft grading statute was provided a lesser penalty). We find our supreme court's analysis in these companion cases to be pertinent to our review.

First, in Menke, our supreme court determined that value is not an essential element of the offense of theft and that the amendments to the theft grading statute embodied in the Public Safety Act, at least in effect, decreased the punishment for the defendant's crime. 590 S.W.3d at 468. Therefore, the Menke court concluded that that the lesser penalty language of the savings statute was satisfied and that the amended version of the theft grading statute was applicable even where the offense occurred before the amendment's effective date. Id. at 470.

Next, in Keese, the trial court gave the defendant the benefit of the amended theft grading statute in Tennessee Code Annotated section 39-14-105 of the Public Safety Act, even though this act had not yet become effective, and sentenced the defendant, a Range III, career offender, to six years for a Class E felony, rather than sentencing him for a Class D felony, because the value of the property associated with the theft was $1,000 or more but less than $2,500. 591 S.W.3d at 77-78. On appeal, this court affirmed the defendant's conviction but vacated the sentence imposed by the trial court and remanded the case for entry of a twelve-year sentence, which reflected the appropriate sentence for a Class D felony. Id. at 78 (citing State v. Charles Keese, No. E2016-02020-CCA-R3-CD, 2018 WL 1353697, at *12 (Tenn. Crim. App. Mar. 15, 2018), perm. app. granted (Tenn. Aug. 9, 2018)). Ultimately, our supreme court affirmed the decision of this court, holding that "[a]lthough . . . the Criminal Savings Statute is generally applicable to the amended theft grading statute, we must conclude . . . that the amendments cannot be applied in the defendant's case because he was sentenced before the effective date of the Public Safety Act." Id. at 84 (citing State v. Tommy Lee Houser, Jr., No. E2017-00987-CCA-R3-CD,

- 18 -

2017 WL 5054074, at *4-5 (Tenn. Crim. App. Nov. 1, 2017) (affirming the trial court's decision declining to apply the amended version of the theft grading statute where the defendant was convicted and sentenced prior to the amendments' effective date)).

In rendering its holding in Keese, our supreme court cited to the following principles:

> This [c]ourt has held that the legislature may, by the terms of the act, postpone its taking effect beyond the forty days. Wright v. Cunningham, 91 S.W. 293, 295 (Tenn. 1905) (citing [State v.] Trewhitt, 82 S.W. [480,] 483 [(Tenn. 1904)] ("There is nothing in the provision referred to, or in any other provision of the Constitution, to forbid the [l]egislature making even a longer interval than the one that was specially designated as a safeguard.")). Conversely, "if the public should require it, the [l]egislature, by special direction to that effect, might cause [the act] to become operative at once." Trewhitt, 82 S.W. at 483. Indeed, "a statute is duly enacted and vitalized immediately upon full compliance by the [l]egislature with the requirements of the [c]onstitution for the enactment of laws, but [] it does not become effective and binding upon the citizens . . . except as provided by the terms of the [a]ct itself, or in the absence thereof, by the provisions of the [c]onstitution." State ex rel. Banks v. Taylor, 287 S.W.2d 83, 86 (Tenn. 1955). In cases where the legislature provides an effective date, the effective date "become[s] an expression of the legislative will in the form of a rule of action prescribed for the regulation of the conduct and affairs of the people; but it is a part of the same expression that the people shall not be compelled or permitted to act thereunder until the expiration of a time fixed." Wright, 91 S.W. at 295 (emphasis added).

591 S.W.3d at 83. Applying these principles to the facts in Keese, the court continued,

> The language of the [c]riminal [s]avings [s]tatute does not change the long-standing rule that a statute or act of the legislature cannot become operative until its effective date, nor can "the people . . . be compelled or permitted to act thereunder." Wright, 91 S.W. at 295. The exception to the general rule that offenders must be sentenced pursuant to the statute in effect at the time of the offense embodied in the [c]riminal [s]avings [s]tatute only applies when the defendant is sentenced after the effective date of the relevant amendment. To put it another way, a criminal defendant whose sentence is final prior to the effective date cannot benefit from a statutory amendment that provides for a lesser punishment.

Id. at 84.

- 19 -

Finally, in Tolle, the defendant moved to dismiss the violation warrant at his probation revocation hearing and asked for the trial court to reduce the conviction class of his 2012 conviction for theft of property valued at more than $500 but less than $1,000 from a Class E felony to a Class A misdemeanor in light of the amendments to the theft grading statute in section 39-14-105. 591 S.W.3d at 541-42. At the revocation hearing that followed, the defendant conceded that he violated the terms of his probation; however, he again argued that the probation violation warrant should be dismissed for the reasons outlined in his motion to dismiss and pointed to Rule 35 of the Tennessee Rules of Criminal Procedure for the trial court's authority to reduce the defendant's sentence within 120 days of his probation revocation. Id. at 542. The trial court found that the defendant had violated the terms of his probation but elected to reduce the defendant's sentence to eleven months and twenty-nine days for a Class A misdemeanor, and the State appealed. Id. This court, on appeal, concluded that the trial court had erred in altering the class of the conviction offense following the revocation of the defendant's probation, and it vacated the trial court's order modifying the defendant's sentence to eleven months, twenty-nine days for a Class A misdemeanor. Id. (citing State v. Michael Eugene Tolle, No. E2017-00571-CCA-R3-CD, 2018 WL 1661616, at *6-7, *11 (Tenn. Crim. App. Mar. 19, 2018), perm. app. granted (Tenn. Aug. 9, 2018)).

After our supreme court granted the defendant's application for permission to appeal, the Tolle court held that "the [c]riminal [s]avings [s]tatute d[id] not operate to 'save' the defendant under these circumstances." 591 S.W.3d at 546. The court continued, "Although we have concluded that the [c]riminal [s]avings [s]tatute is generally applicable to the amended theft grading statute, here, the defendant's punishment was imposed in August 2012 when he pleaded guilty to his crimes under the pre-2017 version of the theft grading statute." Id. Accordingly, the Tolle court concluded that the trial court abused its discretion when it modified the offense class and sentence pursuant to the amended version of the theft grading statute following the revocation of the defendant's probation and then affirmed the decision of this court. Id. at *5.

The Defendant does not dispute that he was sentenced prior to the repeal's effective date of July 1, 2019, which was unlike the defendants in Austin, Deberry, Carter, and Person. Though acknowledging the Keese holding, the Defendant submits that the trial court still should have applied the lesser penalty because his case was still "under the trial court's direct review" and cites to the Keese court's language that "a criminal defendant whose sentence is final prior to the effective date cannot benefit from a statutory amendment that provides for a lesser punishment" (emphasis added). The Defendant argues that because a judgment does not become final in the trial court until thirty days after its entry if no post-trial motions are filed or if a post-trial motion is filed, upon entry of the order disposing of the motion, see State v. Mixon, 983 S.W.2d 661, 670 (Tenn. 1999), that the trial court should have vacated the sentence imposed before the effective

date in any of the post-sentencing proceedings that occurred after the effective date, including his Rule 35 motion and motion for new trial. We disagree.

Mixon addressed when the one-year statute of limitations began to run for writ of error coram nobis purposes. 983 S.W.2d at 668-71. The statute then provided that "[t]he writ of error coram nobis may be had within one (1) year after the judgment becomes final[.]" Id. at 668 (citing Tenn. Code Ann. § 27-7-103 (1980)). It was noted that in 1967, the General Assembly had amended the coram nobis statute of limitations by deleting the words, "from rendition of judgment," and by substituting instead, "after the judgment becomes final." Id. at 669. Applying principles of statutory construction, our supreme court held that "the General Assembly intended to change the trigger of the statute of limitations from pronouncement of judgment in the trial court to final judgment in the trial court." Id. at 670. The Mixon court continued, "A judgment becomes final in the trial court thirty days after its entry if no post-trial motions are filed. If a post-trial motion is timely filed, the judgment becomes final upon entry of an order disposing of the post-trial motion." Id. (citing Tenn. R. App. P. 4[10]; State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996)).

In addition, we point out that the language quoted by the Defendant from Keese is more nuanced than the Defendant suggests. To place the excerpt in its context, we will quote it again here:

> The exception to the general rule that offenders must be sentenced pursuant to the statute in effect at the time of the offense embodied in the [c]riminal [s]avings [s]tatute only applies when the defendant is sentenced after the effective date of the relevant amendment. To put it another way, a criminal defendant whose sentence is final prior to the effective date cannot benefit from a statutory amendment that provides for a lesser punishment.

Keese, 591 S.W.3d at 84. Reading this section in its entirety, including the principles cited in the paragraph preceding this one, and which is quoted above, it is clear that our supreme court did not intend for a defendant to benefit from the lesser penalty provision of the criminal savings statute for as long as a case remains in the pipeline.

Relative to the Defendant's Rule 35 motion for dismissal or a reduction in his sentence that was filed after the repeal's effective date, we observe that our supreme court

---

[10] Tennessee Rule of Appellate Procedure 4(a) governs the timely filing of a notice appeal document, stating that "the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within [thirty] days after the date of entry of the judgment appealed from." Subsection (c) deals with the timely filing of notice of appeal document filed after specific post-trial motions and order was entered addressing those motions.

has emphasized in <u>Tolle</u> that under the plain language of Rule 35, the trial court was limited to reducing the defendant's sentence "only to one the court could have originally imposed." 591 S.W.3d at 545 (citing Tenn. R. Crim. P. 35(b)). The <u>Tolle</u> court concluded that Rule 35 did "not permit the trial court to alter the offense class, and at the time of the defendant's original sentencing in 2012, eleven months, twenty-nine days was not an authorized sentence for a Class E felony, to which he pleaded guilty." <u>Id.</u> (footnote omitted). Here, the sentencing range for a Range III, persistent offender convicted of Class E felony was four to six years. <u>See</u> Tenn. Code Ann. § 40-35-112(c). Thus, had the trial court decided to reduce the Defendant's sentence based upon the Defendant's Rule 35 motion, it would have been limited to a minimum sentence of four years and the imposition of possible sentencing alternatives, like probation.

In this case, the Defendant was sentenced on June 17, 2019, and a unified judgment document was "file-stamped" the following day; all occurring prior to the effective date of the amendment to the MVHO Act. Accordingly, the Defendant's sentence was final (for purposes of <u>Keese</u>) prior to July 1, 2019, and this was not affected by the law governing the finality of judgments from <u>Mixon</u> and <u>Pendergrass</u> governing the statute of limitations for coram nobis petitions and the timely filing of a notice of appeal document, respectively. To hold otherwise under these circumstances would yield unworkable results and render the effective date a nullity, as cases could linger in the trial court for years before the "judgment" becomes final, something that occurred in the present case. <u>Cf.</u> <u>State v. Stephens</u>, 264 S.W.3d 719, 728-30 (Tenn. Crim. App. 2007) (analyzing Tennessee Rule of Procedure 33(b), which requires that "the motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered[,]" and holding that "the order of sentence" was entered on the date the uniform judgment document was file-stamped with the court clerk, citing to principles of fairness, consistency, and uniformity). Therefore, we are constrained to agree with the State, in accordance with our supreme court's holdings in <u>Keese</u> in <u>Tolle</u>, that the Defendant is not entitled to relief because his sentence was imposed prior to the amendment's effective date.

<u>CONCLUSION</u>

In accordance with the foregoing, we affirm the Defendant's MVHO conviction and the trial court's imposition of a five-year incarcerative sentence.

_____
D. KELLY THOMAS, JR., JUDGE

- 22 -